**SMITHFIELD HAM AND PRODUCTS COMPANY, INC., Plaintiff,**

v.

**PORTION PAC, INC., Defendant.**

**A. No. 2:95cv306.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 27, 1995.

Timothy N. McGarey, William M. Webner, Ellen A. Efros, Vorys, Sater, Seymour & Pease, Washington, DC, for Plaintiff.

Hunter W. Sims, Jr., Kaufman & Canoles, Norfolk, VA, Jennifer Sarah Blank, Gordon W. Hatheway, Jr., Reed, Smith, Shaw & McClay, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court for resolution of two unresolved issues from Defendant's Motion for Summary Judgment.

### I. Factual and Procedural History

Plaintiff, Smithfield Ham and Products Company, Inc. ("Smithfield"), is a food products company based in Smithfield, Virginia. Smithfield contracted with Defendant, Portion Pac, Inc. ("PPI"), and its predecessors in interest, Borden, Inc. and McCormick & Company, Inc., to manufacture and package barbecue and horseradish sauces for resale by Smithfield to restaurant chains. Smithfield's complaint alleges that PPI misappropriated a proprietary recipe for Smithfield's James River brand barbecue sauce, and used that sauce to persuade one of Smithfield's longtime customers, Flagstar Corporation ("Flagstar"), to contract directly with PPI for its future barbecue and horseradish sauce requirements.[1]

Smithfield sought recovery for PPI's alleged wrongdoing on several theories. Its First Amended Complaint asserts six counts, including: (1) violation of Virginia's Uniform Trade Secrets Act (VUTSA), Va.Code Ann. §§ 59.1–336–343; (2) tortious interference with contractual relations; (3) tortious interference with present and prospective contractual relations; (4) violation of the federal Lanham Act, prohibiting unfair competition, 15 U.S.C. § 1125(a); (5) common law fraud; and (6) breach of the duty of good faith and fair dealing imposed by the Virginia Commercial Code, Va.Code Ann. § 8.1–203. Smithfield later attempted to file a Second Amended Complaint, dropping its statutory claim under the VUTSA, and asserting various theories under the common law of Pennsylvania, where the PPI plant which produced the barbecue sauce is located. Portion Pac, Inc., opposed the late amendment and filed a motion for summary judgment on all counts of the first amended complaint.

The court heard oral argument on November 13, 1995. For the reasons articulated from the bench, the court **DENIED** Plaintiff's motion for leave to amend. The court also **DENIED** summary judgment as to

---

1. Smithfield's complaint also included allegations that another longtime customer, Boddie Noell Enterprises, was improperly solicited. Subsequent to discovery in the case, however, Smithfield has elected not to pursue claims for recovery on the Boddie Noell contract. *See* Plaintiff's Supplemental Brief, at 5 n. 2.

Count 1 for misappropriation of a trade secret in violation of the VUTSA, except that no claim of misappropriation may be asserted with respect to Plaintiff's horseradish sauce recipe, which is admittedly non-proprietary. The court **GRANTED** the Motion for Summary Judgment with respect to Counts 4, 5, and 6. With respect to Counts 2 and 3, alleging common law claims for tortious interference with contractual relationships and expectancies, the court took the matter under advisement. Both parties have submitted supplemental briefs addressing the remaining counts under consideration. These counts are now ripe for determination.

*II. Preemption under the Virginia Uniform Trade Secrets Act*

■ The only remaining issue before the court is whether Counts 2 and 3 of the first amended complaint are preempted by the VUTSA. The relevant section of the VUTSA provides:

 A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.

 B. This chapter does not affect:

 1. Contractual remedies whether or not based upon misappropriation of a trade secret; or

 2. Other civil remedies that are not based upon misappropriation of a trade secret; or

 3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

Va.Code Ann. § 59.1–341 (Michie 1992). The plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret.

While there is no case interpreting the preemption provisions of the Virginia law, other federal courts have interpreted nearly identical versions of the uniform law in other states. *See Coulter Corp. v. Leinert,* 869

F.Supp. 732 (E.D.Mo.1994) (interpreting Florida UTSA); *Hutchison v. KFC Corp.,* 809 F.Supp. 68 (D.Nev.1992) (interpreting Nevada UTSA); *Micro Display Systems, Inc. v. Axtel, Inc.,* 699 F.Supp. 202 (D.Minn. 1988) (interpreting Minnesota UTSA). These courts concluded that the preemption provision is intended to preclude only those common law claims that are premised *entirely* on a claim for the misappropriation of a trade secret. *Coulter Corp.,* 869 F.Supp. at 734 ("[T]he issue becomes whether allegations of trade secret misappropriation *alone* comprise the underlying wrong; if so the cause of action is barred.") (emphasis added); *Micro Display,* 699 F.Supp. at 205 ("To the extent that a cause of action exists in the commercial area *not* dependent on trade secrets, that cause continues to exist") (emphasis in original); *see also Hutchison,* 809 F.Supp. at 71–72 (preempting "duplicative" claims for unjust enrichment and unfair competition under the UTSA, but considering the merits of alleged tortious interference claim).

For example, in *Coulter Corp.* the district court, applying Florida law, concluded that the UTSA barred plaintiff's claims for unfair competition and an accounting because "the only wrong alleged by plaintiff center[ed] on misappropriation of trade secrets." *Coulter Corp.,* 869 F.Supp. at 735. The court allowed other tort claims to go forward, however, finding that the preemption provision "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information." *Id.* Likewise, in *Hutchison,* plaintiffs claimed that defendant misappropriated a trade secret for skinless fried chicken and that "this resulted in unjust enrichment, unfair competition and breach of a confidential relationship." The court found all these claims preempted as "duplicative" of the misappropriation claim under the UTSA. *Hutchison,* 809 F.Supp. at 71. The court went on to dismiss a remaining count for tortious interference, not on preemption grounds, but due to the failure of plaintiffs to demonstrate that defendant knew of their ongoing contractual relationships. *Id.* at 72.

■ In order to survive summary judgment, therefore, a plaintiff must be able to

show that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret. In this case, Smithfield's tortious interference with contract claims can go forward only if they state a claim absent the misappropriation allegations. Defendant PPI argues that absent misappropriation allegations, the remaining language of Counts 2 and 3 is insufficient to constitute tortious interference claims. For the reasons which follow, the court disagrees and concludes that Plaintiff has properly stated claims of tortious interference with contract in Counts 2 and 3.

### III. Tortious Interference under Virginia Law

In order to maintain a tort action for interference with contractual relations or a business expectancy, Smithfield must allege and ultimately prove:

(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued the relationship or realized the expectancy; and (4) damage to plaintiff.

Levine v. McLeskey, 881 F.Supp. 1030, 1057 (E.D.Va.1995) (citing Glass v. Glass, 228 Va. 39, 51–52, 321 S.E.2d 69 (1984)). In addition, when the contract is terminable at will or merely a business expectancy, the plaintiff must show that the defendant's actions were improper. Duggin v. Adams, 234 Va. 221, 227, 360 S.E.2d 832 (1987) (citing Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744 (1985)). Methods of interference may be considered improper "because they violate an established standard of a trade or profession." Id. at 228, 360 S.E.2d 832. "Sharp dealing, overreaching or unfair competition may also constitute improper methods." Id. In addition, "misuse of inside or confidential information, or breach of a fiduciary relationship," have been deemed improper under Virginia law. Id. at 227, 360 S.E.2d 832.

Counts 2 and 3 of Smithfield's First Amended Complaint both plead facts which meet this test without considering the misappropriation allegations. In Count 2, paragraph 76 alleges:

The acts of Portion Pac in offering to sell and selling to those it knew to be Smithfield's customers a sauce which imitates the Smithfield James River brand barbecue sauce at a lower price constitutes fraudulent, unjustified, improper and intentional interference with Smithfield's contractual relations with these third parties.

This claim relates to the so-called "Jeff Webb" sauce, now being sold to Flagstar and other PPI customers. The Webb sauce was developed by PPI's Manager of Product Development to imitate the taste of the Smithfield sauce. See Def.Supp.Brief at 4. It is true that Smithfield asserts this sauce was made by misappropriating the proprietary recipe, but PPI disputes that assertion. Portion Pac has argued that Mr. Webb developed the sauce on his own, through trial and error. Importantly for the purpose of this motion, even if the trier of fact believes the sauce was developed independently, given PPI's knowledge of Smithfield's relationship with Flagstar, and Flagstar's interest in the Smithfield sauce, the exploitation of that knowledge through the direct solicitation of Flagstar might still constitute tortious interference with contractual relations. In short, Smithfield could lose its misappropriation claim yet still recover for tortious interference.

Smithfield supports that argument by reference to the deposition of Paul Caras, who was a National Account Manager with PPI's predecessor in interest, Borden. Mr. Caras testified that "[n]ormally when you're selling a customer through a company you don't go out and solicit business from the same customer for your type of product, no. I mean, it is not normally done." Caras Dep. at 13:19–14:1. As a result of this uncontroverted testimony and PPI's admission that it knew of the Smithfield–Flagstar relationship, see Amended Answer ¶ 73, Smithfield has put forward sufficient facts to survive summary judgment on Count 2.

■ Count 3 of the first amended complaint incorporates all of the preceding paragraphs, including paragraph 76. In addition, Paragraph 84 of Count 3 provides:

> The acts of Portion Pac in offering to sell and selling "the same" tasting sauce to Smithfield's customers as the Smithfield JAMES RIVER brand of barbecue sauce at a lower price than the Smithfield brand barbecue sauce through the unauthorized use of the Smithfield recipe constitutes fraudulent, unjustified, improper and intentional interference with Smithfield's present and prospective contractual relations with these third parties.

Again, although Smithfield includes allegations related to the misappropriation of their recipe, this paragraph stripped of those allegations is sufficient to state a claim for interference with a business expectancy. The focus, again, is on PPI's knowledge of Smithfield's customer base, the price Smithfield paid for its sauces, and on the exploitation of that knowledge to gain a business advantage. Accordingly, Count 3 also states a claim independent of the misappropriation theory.

An analysis of PPI's defenses to the misappropriation count also demonstrates why the common law counts must stand. Among other things, PPI asserts that there is no trade secret to protect because Smithfield did not take adequate precautions to safeguard its interest in the sauce's proprietary recipe. Def.Mem.Supp.Mot. for Sum.J. at 25–30. Assuming the truth of that argument, in light of their ongoing contractual relationship with both PPI and Flagstar, Smithfield still may be able to show that PPI's sales to Flagstar constituted tortious interference. Portion Pac also argues that Smithfield suffered no damages because it had no expectancy that Flagstar would renew its contract, despite its eighteen-year relationship with Smithfield and the fact that Flagstar sought a barbecue sauce which was identical to the James River brand, which only Smithfield was authorized to sell. Again, if PPI is successful in persuading the trier of fact that its "Jeff Webb" sauce was developed independently, foreclosing recovery on the misappropriation claim, Smithfield still can present a compelling argument that PPI's misuse of inside information related to pricing, ingredients, and volume of business constituted tortious interference with their long-term contractual relationship and anticipated renewals.

Portion Pac's final argument is that the allegations in Counts 2 and 3 must be identical to the misappropriation claim because "it is not possible to cause damages by stealing a trade secret without interfering with existing or prospective contractual relations." Def.Supp.Brief at 7. Essentially, PPI asserts that any use of the misappropriated secret would necessarily impinge on an existing or potential contract with the rightful owner, and thus constitute tortious interference. Permitting the tort claims to go forward, they contend, would allow a double recovery.

■ This argument fails for two reasons. First, the VUTSA prohibits the improper acquisition of a trade secret, whether or not the secret is used in direct competition with the rightful owner. Va.Code Ann. § 59.1–336; *see Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 665 (4th Cir.) (interpreting Maryland UTSA, and citing cases), *cert. denied,* —— U.S. ——, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993). This is so because the value of the trade secret as an asset of the company is diminished by its disclosure, whether or not the person acquiring it uses it competitively. *Trandes,* 996 F.2d at 665 (citing Restatement (First) of Torts § 757 cmt. c). A person could be liable for damages under the VUTSA, therefore, even if he is not guilty of tortious interference. As discussed above, the reverse is also true. The two claims may be wholly independent, indeed in this case they are.

Moreover, even if proof of tortious interference were required to recover on the misappropriation claim, this fact would not bar the claims in Counts 2 and 3. The question is not whether success on the misappropriation claim would provide the relief sought by the common law counts, but whether failure of the misappropriation claim would doom the remaining counts as well. In this case, it clearly would not.

## IV. Conclusion

Because Plaintiff has alleged two distinct common law theories of recovery which do not depend upon the misappropriation of a trade secret allegations, those claims are not preempted by the provisions of the VUTSA. Accordingly, Defendant's Motion for Summary Judgment as to Counts 2 and 3 of the First Amended Complaint is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so **ORDERED**.