**GLASSTECH, INC., et al., Plaintiff,**

v.

**TGL TEMPERING SYSTEMS, INC., et al., Defendant.**

**No. 3:98 CV 7215.**

United States District Court,
N.D. Ohio,
Western Division.

June 4, 1999.

Robert J. Gilmer, Eastman & Smith, Toledo, OH, Ernie L. Brooks, Earl J. LaFontaine, Brooks & Kushman, Southfield, MI, for Glasstech Inc., a Delaware corporation, plaintiff.

Ronald S. Moening, Sr., Robison, Curphey & O'Connell, Toledo, OH, Louis C. Long, Eric A. Kauffman, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for TGL Tempering Systems, Inc., Pennsylvania corporation, defendant.

Ronald S. Moening, Sr., Carl A. Eck, Jamie K. Zurasky, Louis C. Long, Eric A. Kauffman, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for Tamglass Inc., Pennsylvania corporation and Tamglass Ltd. OY, a foreign corporation, defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motion to dismiss. For the following reasons, Defendants' motion to dismiss for lack of personal jurisdiction over the Defendants with respect to the patent claims is granted. This Court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1332.

## BACKGROUND

Plaintiff Glasstech, Inc. ("Glasstech") is a Delaware Corporation with its principal place of business in Perrysburg, Ohio. Glasstech is engaged in the business of selling glass sheet heating, bending, and tempering equipment and is the holder of hundreds of patents in the United States and in many foreign countries. Defendants TGL Tempering Systems, Inc. ("TGL") and Tamglass, Inc. ("Tamglass") are Pennsylvania corporations. TGL has it principal place of business in Cinnaminson, New Jersey and Tamglass is principally located in Pittsburgh, Pennsylvania. Defendant Tamglass Ltd. OY ("Tamglass OY") is a Finnish corporation having its principal place of business in Tampere, Finland. Each of the Defendants are in the business of manufacturing and servicing advanced tempering and laminating machinery for automotive and architectural glass manufacturers. Glasstech and Defendants have been competing for many years.

On September 20, 1990, Glasstech entered into a contract with Mitsubishi International Corp. ("Mitsubishi") for the sale and installation of a horizontal roller hearth architectural bending and tempering system ("architectural bender"). Mitsubishi agreed in the contract of sale to protect the confidentiality of Glasstech's technical information. Mitsubishi then transferred the architectural bender to Watanabe Mage Glass Company, Ltd. ("Watanabe"). Watanabe subsequently declared bankruptcy under the laws of Japan. A court-appointed trustee for Watanabe sold the architectural bender to Craftman K.K. who thereafter sold the machine to Sansui, Ltd. ("Sansui"). Subsequently, Sansui entered into negotiations with Tamglass OY to sell the architectural bender. The sale contract, dated January 11, 1997, provided that the seller had "the full authority to sell the equipment on behalf of all the creditors of the Watanabe Mage Glass Co., Ltd. bankruptcy estate," and that the "[e]quipment is free of all liens or other obligations of the third party."

Tamglass OY removed the architectural bender from the vacant site of the Watanabe manufacturing plant. The machine was disassembled in Nagoya, Japan and was shipped on a commercial ocean freighter to Baltimore, Maryland. The machine was then moved by truck to Cinnaminson, New Jersey.

Glasstech filed a complaint on April 13, 1998 alleging that Defendants violated the Ohio Uniform Trade Secrets Act, Ohio Rev.Code §§ 1333.65 *et seq.* and the Ohio common law by misappropriating its trade secrets. On October 27, 1998, Glasstech amended its complaint to include a claim of

patent infringement and/or induced infringement. The Defendants subsequently filed this motion to dismiss. The Court addresses Defendants' motion below.

## DISCUSSION

### A. Personal Jurisdiction Under Ohio Law

 Plaintiff bears the burden of making a *prima facie* showing that the Court has jurisdiction over the person of each Defendant to the action. On a motion to dismiss for lack of personal jurisdiction, the Court treats the allegations contained in Plaintiff's complaint, affidavits, and depositions as true, and resolves any factual dispute in Plaintiff's favor. *Welsh v. Gibbs,* 631 F.2d 436, 438–39 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Gold Circle Stores v. Body Maven, Inc.,* 711 F.Supp. 897, 899 (S.D.Ohio 1988).

 Generally, the Court engages in a two-step process in determining whether it has *in personam* jurisdiction over the Defendants. First, it must look to Ohio law. A federal district court has jurisdiction over any person "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4 (k)(1)(A). If state law grants the Court *in personam* jurisdiction, the Court must then determine whether such jurisdiction comports with the due process requirements of the United States Constitution. Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal quotation and citation omitted). *See also Omni Capital Intern. v. Rudolf Wolff & Co. Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987) (holding that a court may only exercise jurisdiction over an out-of-state defendant if the defendant is amenable to service of process under the forum's long-arm statute and if the exercise of jurisdiction over the defendant would not violate the Due Process Clause of the Fifth and Fourteenth Amendments.)

 Under the Due Process Clause, there are two bases upon which the Court may exercise jurisdiction over a defendant in a diversity case. First, there is general jurisdiction, which arises in cases in which a defendant's "continuous and systematic" contacts within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state. *Nationwide Mutual Ins. Co. v. Tryg Intern. Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996) (citation omitted). Second is specific jurisdiction, which exists in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Id.*

 The Ohio long-arm statute does not extend personal jurisdiction to the limits of due process. *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541, 546 n. 1 (1994) (holding it error to interpret the long-arm statute to give Ohio courts jurisdiction to the limits of the Due Process Clause, "since that interpretation would render the first part of the court's two-part analysis nugatory"); *see also Hoover Co. v. Robeson Indus. Corp.,* 904 F.Supp. 671, 673 (N.D.Ohio 1995). The Ohio long-arm statute provides for jurisdiction over a person as to a cause of action arising from the person's:

(1) Transacting any business in the state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; ***

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev.Code § 2307.382(A).

If this case were not a patent action, the analysis of personal jurisdiction would be relatively straightforward. Under the Due Process Clause, Defendants have "continuous and systematic" contacts within Ohio which generally renders Defendants amenable to suit in any lawsuit brought against it in this District. *Nationwide Mutual Ins. Co. v. Tryg Intern. Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996). However, the Federal Circuit has outlined a separate test for patent cases which redefines the situs of the injury for the purposes of personal jurisdiction and removes the ability of Ohio's long arm statute from reaching out and rendering Defendants amenable to suit in Ohio.

*B. Personal Jurisdiction and Patent Law*

█ A new application of personal jurisdiction standards to patent infringement actions was announced in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed.Cir.1994) and *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576 (Fed.Cir.1994). In *Beverly Hills Fan,* the Federal Circuit clarified that the legal situs of an injury to intellectual property rights was not the residence of the owner of the interest as some courts had previously concluded. *See Acrison, Inc. v. Control & Metering Ltd.,* 730 F.Supp. 1445, 1448 (N.D.Ill.1990) (finding that since intellectual property rights relate to intangible property, no particular physical situs exists, and therefore if a legal situs must be chosen, it is not illogical to pick the residence of the owner). Rather, the Circuit determined that the better methodology for defining the legal situs of an injury under patent law was to locate the place of the sale of the infringing good. The Court reasoned:

An analysis of long-arm jurisdiction has its focus on the conduct of the defendant. Plaintiffs contacts with the forum—such as where the plaintiff resides—as a general proposition are not considered a determinative consideration. Additionally, a focus on the place where the infringing sales are made is consistent with other areas of intellectual property law—it brings patent infringement actions into line with the rule applied in trademark and copyright cases.

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1572 (Fed.Cir.1994) (internal citations omitted). Accordingly, the Circuit determined that "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee". *Id.*

On the heels of *Beverly Hills Fan,* the Federal Circuit decided *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576 (Fed.Cir.1994). *Philips* reaffirmed the holding in *Beverly Hills Fan* by stating that as a matter of uniform federal patent law, patent infringement occurs where allegedly infringing sales are made. *Id.* at 1578–1579. The Court added:

[W]hile it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute. *See* 35 U.S.C. § 271(a) (1988). The statute does not speak generally of the "tort of patent infringement," but specifically of a liability that arises upon the making, using, or selling of an infringing article. Thus, the statute on its face clearly suggests the conception that the "tort" of patent infringement occurs where the offending act is committed and not where the injury is felt. *Id.*

*Philips,* 35 F.3d at 1579.

The *Philips* Court next analyzed the Illinois long arm statute and noted that "[W]hile the federal choice of law rule

concerning personal jurisdiction requires us to look to state law in the first instance, the character of the particular tort alleged here requires a look back to federal law on the conceptualization of the tort and its situs." *Id.* In other words, the Court determined that since the state long arm statute is merely a procedural rule which provides that torts committed in the state give rise to personal jurisdiction over potential defendants, a court must look to the federal law of patents to determine the situs of the injury in order to decide if personal jurisdiction exists.

The *Philips* Court found that the "making" or the "using" of an infringing article is relatively straightforward, which makes it easy to pinpoint the situs. However, the "selling" of an infringing article could be the location of the buyer, seller or a single point at which some legally operative act took place. *Id.* at 1579. The Court concluded that the "more familiar places of contracting and performance" should control the location of the situs; thus, in *Philips* personal jurisdiction was satisfied because the sale occurred in the forum. *Id.* The Court pointed out that the location of the buyer was not necessarily the only forum which would have personal jurisdiction with respect to the sale. The Court then applied the Due Process Clause and the state's long arm statute (which were synonymous) to the facts, and determined that it did not violate "traditional notions of fair play and substantial justice" to cause defendants to be summoned into court in the forum because it was foreseeable from their contacts with the state. *Id.* at 1580.

*Beverly Hills Fan* and *Philips* are crucial to a determination of personal jurisdiction in this matter because the decisions outline the steps this Court must utilize in making its jurisdictional determination. The rule now directs that the "tort" of patent infringement arises upon the making, using, or selling of an infringing article, and thus the "tort" occurs where the offending act is committed and not where the injury is felt. *North American Phil-*

*ips v. American Vending Sales,* 35 F.3d 1576,1578–1579 (Fed.Cir.1994).

With the forgoing rule in mind, it is difficult to see how Ohio could be the legal situs of the injury. The bender has never entered Ohio's borders nor have any dealings with respect to the use or sale of the bender taken place in Ohio. Since the bankruptcy of Watanabe, the bender has been sold numerous times in Japan, and then subsequently shipped to Maryland and moved by truck to Cinnaminson, New Jersey. The Ohio long arm statute limits the state's personal jurisdiction over nonresident defendants as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons:

(1) Transacting any business in the state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; ***

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev.Code § 2307.382(A).

The instant cause of action did not arise from the transaction of business in Ohio or from an act or omission in this state. Furthermore, Ohio Rev.Code § 2307.382(A)(4) and (6) do not reach Defendants because the situs of the injury, as defined under *Beverly Hills Fan* and *Philips*, occurs where the infringing sale was made. The situs in this matter appears to be Japan or

perhaps in New Jersey, but in any event the allegedly infringing sales were not made in Ohio. Therefore, as the cause of action did not arise in Ohio and the situs of the use or sale are not within Ohio under federal patent law, the Ohio long arm statute cannot be interpreted to reach Defendants.

The Court is cognizant of the fact that the result in this case is inapposite to the result that would have been reached had this matter not required the application of uniform patent law. Under other circumstances, "continuous and systematic" contacts resulting in general jurisdiction would be sufficient to bring Defendants within the Court's jurisdiction under either Ohio Rev.Code § 2307.382(A)(4) or (6) because the situs of the injury is normally where the injury is felt.[1] However, the intangible nature of intellectual property provoked the Federal Circuit to define the injury of the situs to be outside the reach of Ohio's long arm statute unless the making, using, or selling of an infringing article occurs within Ohio's borders. Although the Federal Circuit did not discuss the impact of the new definition of the situs of the injury on the reach of a state's long arm statute when the contacts are substantial enough to evoke general jurisdiction, the Federal Circuit expressly chose the new definition due to fairness concerns under the prior rule. Therefore, this Court must reach the unconventional result that in Ohio, no matter how prevalent a defendant's unrelated contacts are with the state, a plaintiff cannot summon that defendant into Court when patent law

is at issue. In this case, the situs of the injury was not Ohio, and thus this Court does not have personal jurisdiction over Defendants.

## C. Venue Under the Uniform Patent Law

■ Venue in a patent infringement case is governed by 28 U.S.C. § 1400(b): "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." In other words, if a defendant does not have a regular and established place of business in the forum state, it must "reside" there. *Id.* See also *Morrison Co., Inc. v. WCCO Belting, Inc.* 35 F.Supp.2d 1293, 1296–1297 (D.Kan. 1999). A corporate defendant is deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed.Cir.1990) (outlining the law of venue in patent infringement cases). Therefore, venue is not proper unless the corporate defendant is subject to personal jurisdiction in the forum. *See also Philips*, 35 F.3d at 1577 n. 1 (holding that the venue issue is subsumed in the personal jurisdiction issue in a patent action). This Court has determined that it does not have personal jurisdiction over Defendants in this matter with respect to the patent infringement claims and, therefore, venue is improper as well.[2]

---

1. It is interesting to note that there has previously been some disagreement with respect to whether Ohio's long-arm statute extends to the constitutional limits of the Due Process Clause. In *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988) and *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc.*, 811 F.2d 967, 969 (6th Cir.1987), the Sixth Circuit concluded that Ohio's long-arm statute did extend to the limits of the Due Process Clause. However, the Ohio Supreme Court subsequently held that Ohio's long-arm statute does not extend personal jurisdiction to the limits of due process because such an "interpretation would render the first part of

the court's two-part analysis nugatory." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541, 546 n. 1 (1994). Cases involving patent law are a clear illustration that in certain instances Ohio's long-arm statute will not allow personal jurisdiction even though a court has general jurisdiction over a defendant which satisfies the requirements under the Due Process Clause.

2. As this Court does not have personal jurisdiction or venue over Defendants' patent claims, it would be inappropriate to analyze the merits of Defendants' other grounds for dismissal.

*D. Plaintiff's Remaining Claims*

The responses filed by Plaintiff to Defendants' various motions to dismiss focus primarily upon the patent claims. However, Plaintiff's complaint also contains claims under the Ohio Uniform Trade Secrets Act, Ohio Rev.Code § 1333.61 *et seq.*, in addition to the claims of common law misuse and misappropriation of trade secrets, quasi-contract/quantum meruit, unjust enrichment and unfair competition. Defendants' motion to dismiss these additional claims is addressed below.

*i. The Ohio Uniform Trade Secret Act*

The Ohio Uniform Trade Secret Act ("UTSA") defines "trade secret" as follows:

> "Trade secret" means information, including the. whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names and addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other person who can obtain economic value from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev.Code § 1333.61(D). The policy reasons for affording protection to these commercial intangibles are to prevent exploitation by reprehensible business methods and to encourage innovation. *See Developments in the Law—Competitive Torts,* 77 Harv.L.Rev. 947, 947–48 (1964). Defendants contend that Plaintiff fails to state a recognizable claim under the UTSA because Defendants have failed to specifically identify what trade secrets and confidential ˙technology the Plaintiff claims the Defendants have misappropriated. Although it is true that Plaintiff has

not disclosed which portion of the bender contains trade secrets other than the portions of the machine which are already patented, it would be improper under Fed. R.Civ.P. 8 for this Court to require Plaintiff to provide specificity in its pleadings or suffer dismissal. Therefore, Defendants' motion to dismiss the claims brought under UTSA cannot be granted on this ground.

Defendants also assert that Plaintiff has failed to show that they acquired the bender or its alleged trade secrets through "improper means" as defined under the UTSA. " 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." Ohio Rev. Code § 1333.61(A). Trade secrets are protected only when they are disclosed or used through improper means. *Chicago Lock Co. v. Fanberg,* 676 F.2d 400, 404 (9th Cir.1982). Furthermore, in order to prove misappropriation of a trade secret, Plaintiff must establish that Defendants acquired the trade secret as a result of a confidential relationship, and that Defendants have used or disclosed the trade secrets. *Jostens, Inc. v. National Computer Systems, Inc.,* 318 N.W.2d 691, 701 (Minn.1982). *See also Eutectic Welding Alloys Corp. v. West, 281 Minn.* 13, 18, 160 N.W.2d 566, 570 (1968) (setting out the elements of a trade secret violation).

Defendants argue that the undisputed facts illustrate that they did not acquire the bender or any trade secrets contained therein by "improper means." The bender was sold under the jurisdiction of the bankruptcy court to Craftman K.K. who thereafter sold the machine to Sansui. Defendants purchased the bender through its negotiations with Sansui. There are no facts provided in the complaint which could be construed to show that Defendants obtained the bender through "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other

means." Ohio Rev.Code § 1333.61(A). Plaintiff merely states that Defendants "surreptitiously" acquired the bender, but fails to provide any facts to bolster this allegation.

Furthermore, a claim under the UTSA requires that Defendants must have acquired the trade secret as a result of a confidential relationship. No confidential relationship exists between Plaintiff and Defendants. Glasstech entered into a contractual relationship with Mitsubishi to protect its trade secret, and thus a confidential relationship existed between those two parties. However, Defendants acquired the bender after it had been disposed of through the bankruptcy court and subsequently sold on two separate occasions. As Defendants were not a party to the contract which bound Mitsubishi to protect Glasstech's proprietary information, no confidential relationship exists between Plaintiff and Defendants. Therefore, Defendants' motion to dismiss Plaintiff's cause of action under the UTSA is granted.

### ii. Preemption of Common Law Claims

Plaintiff asserts common law claims of misuse and misappropriation of trade secrets, quasi-contract/ quantum meruit, unjust enrichment and unfair competition. Ohio Rev.Code § 1333.67 specifically preempts common law claims, with three articulated exceptions. The statute provides:

(A) Except as provided in division (B) of this section, sections 1333.61 and 1333.69 of the Revised Code displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.

(B) Sections 1333.61 and 1333.69 of the Revised Code do not affect any of the following:

(1) Contractual remedies, whether or not based on misappropriation of a trade secret;

(2) Other civil remedies that are not based on misappropriation of a trade secret;

(3) Criminal remedies, including those in other sections of this chapter, whether or not based on misappropriation of a trade secret.

Ohio Rev.Code § 1333.67. The preemption section of the UTSA has been interpreted to bar claims which are based entirely on factual allegations of misappropriation of trade secrets. *Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1474–75 (D.Colo. 1996), *see also Smithfield Ham and Products Co. v. Portion Pac, Inc.*, 905 F.Supp. 346, 348 (E.D.Va.1995) (holding that "the plain language of the preemption provision indicates that the law was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret"); *Coulter Corp. v. Leinert*, 869 F.Supp. 732 (E.D.Mo.1994) (concluding that "the issue becomes whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so the cause of action is barred").

The language of the statute appears to clearly preempt Plaintiff's claims for misuse and misappropriation of trade secrets. These common law claims are " 'no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret appropriation' " *Powell*, 948 F.Supp. at 1474 citing Roger M. Milgrim, *Milgrim on Trade Secrets*, § 1.01[4] at 1–68.14 (1996). Plaintiff's common law claims of misuse and misappropriation of trade secrets are therefore displaced by the Ohio UTSA.

Furthermore, Plaintiff alleges in its complaint that Defendants have benefitted from having access to, and use of, Glasstech's proprietary technology and trade secrets. The claims for quasi-contract/quantum meruit and unjust enrichment contain a more difficult question because § 1333.67(B)(1) provides an ex-

ception for contractual remedies. However, Defendants correctly points out that quantum meruit is an equitable or restitutionary remedy rather than a contractual remedy. In *Sonkin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App.3d 169, 175, 614 N.E.2d 807, 811 (1992), the Supreme Court of Ohio stated that:

> [quantum meruit] was historically a common count in the action of assumpsit, which allowed recovery "for services performed for another on the basis of a contract implied in law or an implied promise to pay the performer for what the services were reasonably worth." *In re Voss Estate*, 20 Wis.2d 238, 121 N.W.2d 744 (1963). Thus, quantum meruit is a doctrine derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another. In order to prevent such an unjust enrichment, the law implied a promise to pay a reasonable amount for the services rendered and even for materials furnished, in the absence of a specific contract. *See Swiftships, Inc. v. Burdin*, 338 So.2d 1193, 1195 (La.App. 1976).

*Sonkin & Melena Co.*, 83 Ohio App.3d at 175, 614 N.E.2d at 811. Similarly, the doctrine of unjust enrichment provides that a person shall not be allowed to profit or enrich himself inequitably at another's expense, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made. *Norton v. City of Galion*, 60 Ohio App.3d 109, 110, 573 N.E.2d 1208, 1209 (1989).

This Court's research could not uncover a single Ohio case which dealt with the scope of Ohio Rev.Code § 1333.67(B)(1) and whether "contractual remedies" is defined to include legal as well as equitable remedies. However, two other district courts have held that the UTSA's exception for contractual remedies does not extend to quasi-contract because the claims utilize the same operative facts which would give rise to a claim for misappropri-

ation of trade secrets. In *Hutchison v. KFC, Corp.*, the district court found that Plaintiffs unjust enrichment and unfair competition arguments were based on the allegations that Defendant misappropriated their trade secret for skinless fried chicken. The Court determined that since the two claims were duplicative they were displaced by the UTSA and should be dismissed. *Hutchison v. KFC, Corp.*, 809 F.Supp. 68, 71 (D.Nev.1992). Additionally, in *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F.Supp. 316, 321 (N.D.Ill.1995) the Plaintiff admitted that its claim for unjust enrichment was essentially a claim for restitution and barred by the UTSA. Likewise, this Court concludes that Plaintiff's claims for quasi-contract/quantum meruit and unjust enrichment are essentially restitutionary in nature and are displaced by § 1333.67(A), as they do not fall under any exception enumerated in § 1333.67(B).

Finally, Plaintiff also claims that Defendants are guilty of unfair competition. As noted above, the district court in *Hutchison v. KFC, Corp.*, 809 F.Supp. 68, 71 (D.Nev.1992) determined that the Plaintiffs' unfair competition argument was based on the allegations that Defendant misappropriated their trade secret and thus the claim was preempted by the UTSA. Additionally, this issue was specifically addressed by a federal district court in Colorado where an employee stole Plaintiff's drawings and specifications for a machine designed by Plaintiff which produced plastic cosmetic applicators. *Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1476 (D.Colo.1996). In denying a claim for unfair competition, the Court reasoned:

> ... I conclude that the plaintiff cannot succeed on its claim for unfair competition, regardless of whether the machine design is found to be a trade secret. If plaintiff wanted protection for its machine, it had a ready avenue under the law, and, indeed, plaintiff ardently contends that it has protected its ideas by establishing them as trade secrets.

Should plaintiff fail to establish that it does own protectable trade secrets, however, it cannot fall back on a general theory of unfair competition. To credit plaintiff's argument would make the establishment of the requirements for a protectable trade secret under the UTSA essentially meaningless.

*Id.* at 1476.

Likewise, in the instant case, Plaintiff's claim relates to the misappropriation of proprietary information which is designed to be protected through the law of trade secrets and patents. Therefore, the Court is convinced that it is appropriately brought under the bodies of law governing those topics. Defendants' motion to dismiss Plaintiff's claim for common law unfair competition is granted.

*E. Summary*

Pursuant to the Federal Circuit's rulings in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir.1994) and *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed.Cir.1994), this Court cannot establish personal jurisdiction over Defendants with respect to the patent law claims. The situs of the injury under current case law is no longer where the injury is felt, but where the infringing act was committed, i.e. where the infringing item was made, used, or sold. *Philips*, 35 F.3d at 1579. As the allegedly infringing sales were not made in Ohio, the State's long arm statute does not confer personal jurisdiction on this Court. Furthermore, this Court lacks venue over the patent claims because venue is not proper unless the corporate defendant is subject to personal jurisdiction in the forum. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed.Cir.1990).

As to the remaining claims alleged in Plaintiff's complaint, Defendants motion to dismiss is granted. Under the Ohio UTSA, Plaintiff must allege that Defendants' acquired the proprietary knowledge through improper means. Plaintiff has not set forth facts which could be construed to show that Defendants acquired the bender through theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means as required under Ohio Rev.Code § 1333.61(A). In any event, no contractual relationship exists between Plaintiff and Defendants; thus Defendants' motion to dismiss the Plaintiffs' claim pursuant to the UTSA must be granted. Additionally, Plaintiff's common law claims of misuse and misappropriation of trade secrets, quasi-contract/quantum meruit, unjust enrichment and unfair competition must be dismissed because the claims are " 'no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret appropriation.' " *Powell*, 948 F.Supp. at 1474 citing Roger M. Milgrim, *Milgrim on Trade Secrets*, § 1.01[4] at 1–68.14 (1996).

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint with respect to the patent claims is dismissed for want of personal jurisdiction and venue. Also granted is Defendants' motion to dismiss Plaintiff's claims under the Ohio UTSA, and its common law claims of misuse and misappropriation of trade secrets, quasi-contract/quantum meruit, unjust enrichment and unfair competition.

IT IS SO ORDERED.