OPINION
{¶ 1} Plaintiff-appellant, Columbus Steel Castings, Inc., appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Alliance Castings Company ("Alliance"). For the following reasons, we affirm in part, and reverse in part, the judgment of the trial court.
 {¶ 2} Both appellant and Alliance produce bolsters for railroad cars. Bolsters are steel crossbeams that are positioned under railroad cars for support and stabilization. The production of these bolsters requires the use of a bolster milling machine. In 2003, *Page 2 
management for appellant determined that the bolster milling machine in operation at its foundry was not adequate. As a result, appellant retained defendant-appellee, King Tool Company ("King Tool"), to build a replacement bolster milling machine for use at its foundry. The bolster milling machine was built and placed in operation. Subsequently, appellant learned that Alliance retained King Tool to build for it a bolster milling machine. In appellant's view, the machine built for Alliance by King Tool was essentially the same as the one produced for it and that this transaction was improper.
 {¶ 3} Consequently, in January 2006, appellant initiated an action in the trial court against Alliance and King Tool. Appellant asserted the following seven causes of action: (1) misappropriation of trade secrets as to King Tool; (2) common law conversion as to King Tool; (3) breach of contract as to King Tool; (4) breach of fiduciary duties as to King Tool; (5) unjust enrichment as to King Tool; (6) unjust enrichment as to Alliance; and (7) misappropriation of trade secrets as to Alliance. Appellant subsequently amended the complaint to allege a claim of breach of confidentiality as to King Tool. The basis of appellant's two claims against Alliance was Alliance's alleged misappropriation of trade secrets concerning the bolster milling machine designed and built for appellant's use.
 {¶ 4} In January 2007, Alliance and King Tool filed motions for summary judgment. In April 2008, the trial court issued a decision concerning these motions. The trial court sustained in part and overruled in part King Tool's motion for summary judgment. The trial court found no genuine issue of material fact regarding appellant's breach of fiduciary duty claim against King Tool, but found that genuine issues of material fact exist regarding appellant's claims against King Tool for misappropriation, conversion, breach of contract, and unjust enrichment. *Page 3 
 {¶ 5} In contrast, the trial court sustained Alliance's motion for summary judgment in its entirety. The trial court determined that there is a genuine issue of fact as to whether the information concerning the bolster milling machine developed for use by appellant qualifies as a trade secret under R.C. 1333.61(D). However, the trial court determined that appellant failed to produce evidence demonstrating that Alliance used improper means to acquire the information, or that Alliance knew or had reason to know the information was acquired improperly. The trial court resolved that Alliance is entitled to judgment as a matter of law as to appellant's claim for misappropriation. Regarding appellant's unjust-enrichment claim against Alliance, the trial court found that appellant failed to present any evidence demonstrating that appellant conferred a benefit upon Alliance. On the basis of this assessment, the trial court resolved that Alliance is entitled to judgment as a matter of law as to appellant's unjust-enrichment claim. On April 28, 2008, the trial court filed a judgment entry granting summary judgment in favor of Alliance. The entry expressly provides that there is no just reason for delay.
 {¶ 6} Appellant appeals from the judgment of the trial court granting summary judgment in favor of Alliance and asserts the following single assignment of error for our review:
 The lower court erred by sustaining Alliance's motion for summary judgment. Contrary to the lower court's holding, genuine issues of material fact do exist regarding Columbus Steel's misappropriation of trade secrets and unjust enrichment claims against Alliance. The lower court erred in finding that as a matter of law Alliance could not misappropriate Columbus Steels' trade secret because it received such information through an alleged independent contractor. The lower court also erred in finding that there was no material issue of fact as to whether Alliance knew or had reason to know that the trade secret information was acquired through improper means. Finally, the lower court *Page 4 
erred in finding that no material issue of fact existed as to whether Alliance had been unjustly enriched by Columbus Steel's trade secret design.
 {¶ 7} Appellant argues that the trial court erred in granting summary judgment in favor of Alliance. Appellate review of a trial court's granting of summary judgment is de novo. Mitnaul v. FairmountPresbyterian Church, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Thus, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton City School Dist. Bd. ofEdn., 69 Ohio St.3d 217, 222.
 {¶ 8} Summary judgment is proper when a movant for summary judgment demonstrates that: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ. R. 56; State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 9} We first address the trial court's disposition of appellant's unjust-enrichment claim against Alliance. The trial court resolved that appellant failed to produce any evidence demonstrating that appellant conferred a benefit upon Alliance, which is one of the factors necessary to establish unjust enrichment. On the basis of this finding, the trial *Page 5 
court concluded that Alliance is entitled to judgment as a matter of law as to appellant's unjust-enrichment claim. Appellant argues that the trial court erred in granting summary judgment in favor of Alliance as to appellant's claim of unjust enrichment. According to appellant, there is a genuine issue of material fact as to whether Alliance has been unjustly enriched. Appellant asserts that the three elements necessary to establish unjust enrichment have been demonstrated in the record. Conversely, Alliance contends that appellant failed to present evidence demonstrating these three elements, and, thus, the trial court properly granted summary judgment as to the unjust-enrichment claim.
 {¶ 10} We resolve that the trial court properly ruled in favor of Alliance as to appellant's claim against Alliance for unjust enrichment. However, we reach this conclusion on a different basis than the trial court.
 {¶ 11} Appellant asserted two claims against Alliance, a misappropriation claim under Ohio's Uniform Trade Secrets Act ("UTSA"), R.C. 1333.61 through 1333.69, and an unjust-enrichment claim. The UTSA provides for a civil remedy for the misappropriation of trade secrets. See R.C. 1333.63; State ex rel. Besser v. Ohio State Univ. (2000),87 Ohio St.3d 535. Additionally, the UTSA displaces conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret. R.C. 1333.67(A). However, the UTSA does not displace contractual remedies, whether or not based on misappropriation of a trade secret, civil remedies that are not based on misappropriation of a trade secret, and criminal remedies. See R.C. 1333.67(B).
 {¶ 12} "Unjust enrichment occurs when a person `has and retains money or benefits which in justice and equity belong to another.'" Johnson v.Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985, at ¶ 20, quotingHummel v. Hummel (1938), *Page 6 133 Ohio St. 520, 528. Restitution "is the `common-law remedy designed to prevent one from retaining property to which he is not justly entitled.'"Johnson, at ¶ 20, quoting Keco Industries, Inc. v. Cincinnati SuburbanBell Tel. Co. (1957), 166 Ohio St. 254, 256. Accordingly, restitution is available as a remedy for unjust enrichment when the following factors are established: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (unjust enrichment).Johnson, at ¶ 20; Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183.
 {¶ 13} Appellant alleges that a benefit has been conferred by it upon Alliance and that Alliance knew that it received a benefit due to appellant. Appellant also alleges that it would be unjust for Alliance to retain the benefit without payment to appellant. Appellant's claim is that Alliance has been unjustly enriched by its misappropriation of appellant's trade secret. Appellant's reply brief, at 6, succinctly states its position that "Alliance has been unjustly enriched by its misappropriation of Columbus Steel's trade secret." Thus, appellant's unjust-enrichment claim was based on the allegation of Alliance's misappropriation. Pursuant to R.C. 1333.67, appellant's unjust-enrichment claim, which is restitutionary in nature, is displaced by the UTSA. See Glasstech v. TGL Tempering Sys., Inc. (N.D. Ohio 1999),50 F.Supp.2d 722 (finding unjust-enrichment claim to be essentially restitutionary in nature and displaced by R.C. 1333.67[A]). On this basis, we conclude that the trial court did not err in granting summary judgment in favor of Alliance as to appellant's claim of unjust enrichment. *Page 7 
 {¶ 14} We next address the trial court's disposition of appellant's misappropriation claim against Alliance. As outlined above, the trial court concluded that there is an issue of fact as to whether information concerning the bolster milling machine constituted a "trade secret," as that term is defined by R.C. 1333.61(D). The trial court further resolved that, because appellant failed to demonstrate that Alliance used improper means to acquire the information, or that Alliance knew or had reason to know the information was acquired through the use of improper means, there is no genuine issue of material fact as to whether there was a misappropriation of trade secrets by Alliance. Appellant argues that the trial court erred in not finding that a genuine issue of material fact exists as to its misappropriation claim against Alliance.
 {¶ 15} Before analyzing the legal issue of whether there is a genuine issue of material fact as to appellant's misappropriation claim, we will outline in more detail what the evidence submitted in the trial court, primarily in the form of deposition testimony, demonstrates.
 {¶ 16} Appellant and Alliance are two of the three entities in the United States that produce bolsters for railroad cars. After appellant's management determined, in 2003, that the bolster milling machine in operation at its foundry was deficient, Ron Coleman, the machining manager for appellant, was assigned the task of finding a replacement. Appellant sought a replacement machine that would increase quality and efficiency in the production of the bolsters. King Tool was retained to build the replacement machine, and appellant provided sketches to King Tool in connection with the building of the machine. King Tool proceeded to build the machine, using parts from old machines in their inventory as well as new parts that were specifically purchased for the project. Ultimately, *Page 8 
the replacement bolster milling machine significantly increased efficiency for appellant by eliminating the bottleneck at the milling phase of production.
 {¶ 17} Coleman testified that he and Bob King, the owner of King Tool, agreed that the design of the bolster milling machine would remain confidential between appellant and King Tool. However, King testified that there was no agreement between King Tool and appellant concerning whether the machine could be duplicated. King's testimony was supported by others. Stephen Kohrs, the shop foreman at King Tool, testified that Coleman did not indicate that appellant did not want the design of the bolster milling machine developed for appellant to be used by anyone other than appellant. Additionally, Robert Wethington, the sales manager for King Tool, testified that King Tool did not reach any agreement with appellant concerning the confidentiality of information associated with the bolster milling machine.
 {¶ 18} Sometime in 2004, Lawrence Stewart, the general manager of Alliance, talked with Jeff Laird, the vice-president of sales for appellant. Laird told Stewart that appellant had ordered a new bolster milling machine from a company located in Kentucky, across the river from Cincinnati. At the time, management for Alliance was not satisfied with aging bolster milling machines at its foundry and was seeking to upgrade with better equipment to improve the bolster machining process. Thus, Stewart suggested to Don Blake, who was doing consulting work for Alliance on such matters as plant engineering and maintenance, that he investigate the identity of the company making this machine for appellant.
 {¶ 19} Through research, Blake determined that it was King Tool that was building the machine. Blake telephoned King Tool and talked with King, who told him that, if he *Page 9 
wanted to look at the machine, he better get down to their location in Kentucky before it was shipped to appellant. Within a day or two, Blake and Michael Burge, a maintenance supervisor for Alliance with general machine knowledge, went to King Tool's foundry to look at the machine. After meeting with King Tool personnel, Blake and Burge were shown the bolster milling machine that was being built for appellant.
 {¶ 20} Upon viewing the machine, Blake inquired into whether he could take pictures. Initially, Blake was told that it was permissible, and, using a digital camera owned by Alliance, he took three pictures of the machine. As he was getting ready to take a fourth picture, King instructed him not to take any pictures. Blake took a fourth picture and then put his camera away, and later returned the camera to Alliance. King spent a couple hours with Blake and Burge answering their questions regarding the machine. After his visit to King Tool, Blake reported to Alliance regarding his thoughts on the machine at King Tool, and someone from Alliance contacted Wethington to discuss having King Tool build a bolster milling machine for it. Alliance subsequently purchased a bolster milling machine from King Tool.
 {¶ 21} King testified that when Blake and Burge arrived at King Tool, Blake introduced himself as a consulting engineer for appellant and Alliance. Wethington testified that Blake indicated that appellant and Alliance work together, and that he was a consultant for them. However, Blake testified that he did not tell King that he represented appellant. Burge also testified that he did not hear Blake say to anyone at King Tool anything that would suggest that he was associated with appellant.
 {¶ 22} Donald Malenick, the chief executive officer of appellant, learned from Jim Unger, the chairman of a company that owns one-third of Alliance, that Alliance had *Page 10 
purchased a machine from King Tool that was similar to the machine purchased by appellant. Kohrs, who has experience as a mechanic and machine assembler, testified that the bolster milling machine built for appellant was generally the same in design as the one built for Alliance, but there were some modifications, which resulted in a price difference. For example, a hydraulic system was utilized in the machine for appellant; whereas, Alliance's machine did not use a hydraulic system. Bruce Milligan, the vice-president of manufacturing for appellant, testified that he viewed the fixturing, controls, and clamping system of the machine built by King Tool for Alliance and determined that they were similar to that found in the machine built for appellant.
 {¶ 23} In this appeal, there is no dispute that a genuine issue exists as to whether at least some information concerning the bolster milling machine built for appellant constitutes a "trade secret" under R.C. 1333.61(D), which provides as follows:
 "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
 (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
 (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
 {¶ 24} The dispute in this appeal centers on whether there is a genuine issue of material fact as to whether there was a "misappropriation," as that term is defined for purposes of the UTSA. Appellant argues that there is a genuine issue of material fact as *Page 11 
to whether Alliance misappropriated appellant's trade secret. It is appellant's contention that Alliance misappropriated appellant's trade secret due to Blake's misrepresentation to King Tool, which allowed him to gain access to the bolster milling machine being built for appellant. Appellant also contends that Alliance knew or should have known that the design of appellant's bolster milling machine was a trade secret. Alliance argues that it cannot be held liable for the alleged acts of its independent contractor, that it did not know of appellant's claim that the bolster milling machine was a trade secret, and that appellant failed to demonstrate that Alliance knew or had reason to know the information was acquired improperly.
 {¶ 25} R.C. 1333.61(B) provides as follows:
"Misappropriation" means any of the following:
 (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
 (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
 (a) Used improper means to acquire knowledge of the trade secret;
 (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
 (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake. *Page 12 
 {¶ 26} Under R.C. 1333.61(A), "`[i]mproper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."
 {¶ 27} There is testimony in the record that Blake introduced himself as working for both appellant and Alliance when he arrived at King Tool to look at appellant's bolster milling machine. It is undisputed that Blake was not a consultant for appellant; thus, a statement by him that he was a consultant for appellant would have been a misrepresentation.
 {¶ 28} In finding that Alliance did not use improper means to acquire the information based on Blake's alleged misrepresentation, the trial court reasoned that, because the evidence undisputedly demonstrates that Blake was an independent contractor, it would not impute responsibility upon Alliance for Blake's alleged misrepresentation. Appellant challenges this reasoning. Appellant argues that a finding that Blake was an independent contractor does not necessarily shield Alliance from liability for misappropriation under the UTSA. Alternatively, appellant argues that Blake was acting as an agent when he allegedly made the misrepresentation. In response, Alliance correctly observes that the trial court's analysis regarding Blake's independent-contractor status was only pertinent to its determination that, as a matter of law, Alliance did not use improper means to acquire the information. This analysis was not dispositive as to whether Alliance knew or had reason to know that the information was acquired improperly.
 {¶ 29} Because the evidence submitted in the trial court would permit a reasonable person to find that Alliance had reason to know of the misrepresentation, we find that it is *Page 13 
unnecessary to assess the issue of whether Blake was acting as an agent of Alliance when he allegedly made the misrepresentation. The testimony before the trial court was conflicting as to whether Blake represented himself as working for both appellant and Alliance. Burge, who accompanied Blake on his trip to King Tool, testified that he did not hear Blake say to anyone at King Tool anything suggesting that he was associated with appellant. Additionally, Blake testified that he did not portray himself as representing appellant. However, King testified that, when Blake and Burge arrived at the King Tool facility, Blake told him that he was a consulting engineer for both appellant and Alliance.
 {¶ 30} Alliance argues that there is no issue as to whether it had knowledge of Blake's alleged misrepresentation because Burge testified that he never heard Blake indicate that he was associated with appellant. We find this argument to be unpersuasive. Although Burge, an Alliance employee, testified that he did not hear Blake say that he represented appellant, that testimony does not preclude a reasonable inference, based on circumstantial evidence, that he heard Blake make the misrepresentation when introductions were made upon their arrival at the King Tool facility. Viewed most favorably for appellant, Blake's testimony indicated that he and Burge were together when introductions were made upon their arrival at the King Tool facility. Therefore, based on this evidence, a reasonable person could conclude that Burge heard Blake portray himself to King Tool as working for both appellant and Alliance, which would have been a misrepresentation. Such a finding would support a conclusion that Alliance had reason to know that information was acquired improperly.
 {¶ 31} Alliance suggests that it was necessary for appellant to demonstrate that Alliance knew or had reason to know that the information was appellant's trade secret, as *Page 14 
opposed to King Tool's trade secret. However, this suggestion is not supported by R.C. 1333.61(B), which does not provide that the alleged misappropriating party must have actual or constructive knowledge of who owned the trade secret. Alliance arguably would have had reason to know that the design of a more efficient bolster milling machine would derive independent economic value for the owner of the design, considering the existence of a competitive marketplace for the sale of bolsters. In addition, Alliance was arguably on notice that the information was subject to efforts to maintain its secrecy based on the testimony that Blake was told by King not to take pictures of the machine. Although there is no direct evidence that Burge heard this instruction, circumstantial evidence could lead a reasonable person to find that Burge was aware of this instruction.
 {¶ 32} Citing the testimony of King Tool's sales manager, Alliance additionally contends that King Tool would have found Alliance to sell it a bolster milling machine if Alliance had not found King Tool first. Alliance also asserts that it found King Tool because the vice-president of sales for appellant told Alliance's general manager about the machine and the general location of the builder. According to Alliance, this evidence demonstrates that it could have learned about, and did in fact learn about, the bolster milling machine, without Blake's alleged misrepresentation.
 {¶ 33} We find this argument of Alliance to be unpersuasive, as there is a difference between being generally aware that a competitor is having manufactured a custom bolster milling machine and acquiring more detailed information concerning the machine as a result of a misrepresentation. Furthermore, if found necessary to resolve, the issue of whether Alliance would have, in fact, purchased a bolster milling machine from King Tool, or even whether King Tool would have permitted Blake and Bulge to look *Page 15 
at the machine, without the occurrence of the alleged misrepresentation, would be a question for the fact-finder and not appropriate to resolve on summary judgment. Moreover, although disputed by the testimony of other persons involved in the transaction, Coleman testified that there was an agreement of confidentiality between appellant and King Tool as to appellant's machine. Determining whether there was such an agreement of confidentiality would require a trier of fact to resolve the disagreement in evidence.
 {¶ 34} For these reasons, we resolve that a genuine issue of material fact exists concerning whether there was a misappropriation of a trade secret. Therefore, we conclude that the trial court erred in granting summary judgment in favor of Alliance as to appellant's misappropriation claim.
 {¶ 35} Based on the foregoing, we sustain in part, and overrule in part, appellant's single assignment of error. Accordingly, we affirm the judgment of the trial court as to appellant's unjust-enrichment claim, reverse the judgment of the trial court as to appellant's misappropriation claim, and remand this matter to that court for further proceedings consistent with law and this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 BROWN and FRENCH, JJ., concur. *Page 1