**AMERICAN CHIROPRACTIC ASSOCIATION, INC., et al., Plaintiffs,**

v.

**TRIGON HEALTHCARE, INC., et al., Defendants.**

**No. 1:00CV00113.**

United States District Court, W.D. Virginia. Abingdon Division.

July 19, 2001.

George P. McAndrews, Steven J. Hampton and Sharon A. Hwang, McAndrews, Held & Malloy, Ltd., Chicago, IL, William G. Shields, William G. Shields & Assoc., Richmond, VA, for Plaintiffs.

Howard Feller, McGuireWoods LLP, Richmond, VA, for Defendants.

## OPINION AND ORDER

JONES, District Judge.

American Chiropractic Association, Inc. ("ACA"), Virginia Chiropractic Association, Inc. ("VCA"), and individual doctors and patients of chiropractic medicine (collectively "the plaintiffs"),[1] filed suit in this

1. The individual doctors of chiropractic are George Chirikinian, D.C., Douglas Cox, D.C., William Thesier, D.C., John Willis, D.C., and Jerry Willis, D.C. The plaintiff patients are Sarah Allen, Lana Ball, Margaret Byrne, Roger Dalton, Mary Dean, Harvie French, Jr., Patricia Herman, Cindy Linkenhoker, Sandra Phillipi, Darlene Requizo, David Russotto,

court against Trigon Healthcare, Inc., Trigon Insurance Company, Trigon Administrators, Inc., Mid–South Insurance Company, and Trigon Health and Life Insurance Company (collectively "Trigon"), alleging numerous violations of federal and state law.[2] The defendants have filed a motion to dismiss each of those counts on various grounds. Subject matter jurisdiction is asserted pursuant to 15 U.S.C.A. §§ 15, 26 (West 1997), 18 U.S.C.A. § 1964(a) (West 2000), and 28 U.S.C.A. §§ 1331, 1367(a) (West 1993).

The parties have briefed the issues, oral argument was presented, and the motion to dismiss is now ripe for decision.

## I

The plaintiffs claim that Trigon has failed to cover, through its health insurance policies, services provided by doctors of chiropractic due to anti chiropractic bias which is alleged to have existed for decades. (Compl.¶ 48.) In support of this argument, the plaintiffs emphasize a $500 coverage limitation placed by Trigon on "spinal manipulations and other manual medical interventions."[3] (Compl.¶ 119.) According to the plaintiffs, this discriminatory practice has served to deny patients access to this form of medical treatment. (Compl.¶ 2.)

The plaintiffs allege in their complaint that Trigon conspired to restrain interstate trade in violation of 15 U.S.C.A. § 1 (West 1997) (count one), attempted to monopolize the market for treatment of neuromuskuloskeletal conditions in violation of 15 U.S.C.A. § 2 (West 1997) (count two), engaged in a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962 (West 2000) (count three), tortiously interfered with the business enterprises of chiropractic doctors in violation of common law (count four), conspired to injure chiropractic doctors in their trade or practice in violation of Va.Code Ann. § 18.2–499 (Michie 1996) (count five), committed common law breach of a contract (count six), and conspiracy (count seven), and violated Va. Code Ann. §§ 38.2–2203, –3408, –4221, and –4312(E) (Michie 1999), referred to as the Virginia insurance equality laws (count eight).

Trigon seeks to dismiss the plaintiffs' claims for failure to state a claim upon which relief can be granted, see Fed. R.Civ.P. 12(b)(6), and for failure to plead fraud with particularity. See Fed.R.Civ.P. 9(b). I will consider each of the counts of the complaint in turn. In ruling upon a motion to dismiss, I must accept the "well-pled allegations of the complaint as true, and ... construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff[s]." *Ibarra*

Gloria Smith, Lynn Wagner, Andrea Wallace, Patricia Whittington, Benis Wood, Richard Worley, and Dale Yontz. The doctors of chiropractic are all alleged to practice in Virginia and the patients of chiropractic are all alleged to reside in Virginia and be covered by Trigon health care plans.

**2.** The plaintiffs aver in their complaint that all of the defendants are wholly owned subsidiaries of Trigon Healthcare, Inc. (Compl.¶¶ 31–34.) The plaintiffs initially named as a party defendant Blue Cross and Blue Shield Association, but following submission of the present motion, have voluntarily dismissed that defendant.

**3.** As further evidence of alleged discrimination against the practice of chiropractic by the medical community at large, the plaintiffs point to the American Medical Association's "Committee on Quackery," created for the purpose of eliminating chiropractic medicine (Compl.¶ 48), and internal memoranda from the American Medical Association in which are discussed "various methods of excluding doctors of chiropractic" from insurance coverage. (Compl.Ex. A.)

*v. United States,* 120 F.3d 472, 474 (4th Cir.1997). Additionally, under federal notice pleading, the question is whether relief is possible under any set of facts that are consistent with the allegations. *See* Fed. R.Civ.P. 8(a); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Standing.

■ As an initial matter, Trigon has drawn into question the standing of each plaintiff to raise the claims asserted and seek the remedies requested. The plaintiffs respond that because at least one class of plaintiffs have standing to seek relief on all eight counts, it is unnecessary for the court to address the standing of the remaining plaintiffs.

The plaintiffs find support for their argument in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), a case in which the Court found that because one plaintiff had standing to seek injunctive relief, it was unnecessary to address the standing of other plaintiffs to seek such relief.

Unlike the facts in *Village of Arlington Heights,* however, the plaintiffs here each seek injunctive relief as well as actual and punitive damages. As Trigon correctly asserts, the injunctive relief sought by one plaintiff in *Village of Arlington Heights* effectively supplied the remedy sought by the others, that is the discontinuance of certain actions. The same cannot be said for money damages. Thus, the standing of the plaintiffs in this case is at issue.

■ The burden is upon the party who invokes this court's authority "to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley*

*Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (internal quotations omitted).

■ With respect to associations such as VCA and ACA, it is only their members, and not the individual patients, for whom those organizations might seek redress. *See Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Those entities, suing only in their representative capacities in this case, must establish that: (1) its own members would have standing to sue in their own rights; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *See Natural Res. Def. Council, Inc. v. Watkins,* 954 F.2d 974, 978 (4th Cir. 1992). Addressing the third prong under *Watkins,* it has been held that money damages ordinarily require individual participation, *see Telecomm. Research & Action Ctr. v. Allnet Communication Servs., Inc.,* 806 F.2d 1093, 1095 (D.C.Cir.1986), so that VCA and ACA may not proceed on claims for money damages on behalf of their members and may only seek injunctive relief in this case.

■ Focusing particular attention on counts one and two of the complaint, there is also the issue of "antitrust standing." As the Supreme Court has stated:

[T]he focus of the doctrine of "antitrust standing" is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action.

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 534 n. 31, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

The determination of whether VCA and ACA have standing to bring an antitrust action requires analysis of numerous factors such as: the risk of duplicative recovery by multiple antitrust claimants; the extent to which the claim is based upon speculative, abstract, or impractical measures of damages; the causal connection between the alleged violation and the harm suffered; and the relationship of the injury alleged to the forms of injury about which Congress was concerned when it created a private remedy. *See Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 129 (4th Cir.1995). In light of this standard and based upon the pleadings, it is obvious that whatever injuries might have been visited upon both VCA and ACA were only an indirect consequence of whatever harm might have been suffered by its members. Accordingly, they have no standing whatsoever as to counts one and two. *See Associated Gen. Contractors of Cal.,* 459 U.S. at 541, 103 S.Ct. 897.

Regarding the plaintiff doctors of chiropractic, the complaint avers that they seek damages both for themselves and their patients. However, the well-established rule of third party standing is that, in the ordinary course, a litigant must assert his or her own claim and cannot raise a claim for relief on the rights and interests of another person. *See* 15 James Wm. Moore et al., *Moore's Federal Practice* § 101.51[3][a] (3d ed.2000).

The exception to this rule requires that, in addition to having suffered a redressable injury and sharing a close relationship with their patients, the doctors of chiropractic must also demonstrate that their patients are unable to protect their own interests. *See id.* § 101.51[3][c]. Assuming the first two requirements to have been satisfied, the plaintiff doctors here are precluded from raising the claims of their patients because the doctors have not established that the plaintiff patients are unable to maintain the present suit on their own behalf.

In accordance with these standards, the plaintiffs have standing as follows: VCA and ACA may seek only injunctive relief and only for counts three through eight. To the extent they seek injunctive and financial relief, each doctor of chiropractic medicine may sue only on his or her behalf. Similarly, each patient of chiropractic medicine may sue only on his or her behalf.

Having decided the issues of standing, I now turn to the substantive issues raised by Trigon's motion to dismiss.

*B. The Conspiracy Counts.*

The conspiracies charged in counts one,[4] five,[5] and seven[6] make allega-

---

**4.** Count one is based on 15 U.S.C.A. § 1 (West 1997) which provides that "[e]very ... conspiracy, in restraint of trade ... is hereby declared to be illegal." Civil remedies are provided for in 15 U.S.C.A. §§ 15, 26 (West 1997).

**5.** Count five relies on Va.Code Ann. § 18.2–499 (Michie 1996) which states that "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever ... shall be ... guilty of a Class 1 misdemeanor." Civil remedies are provided for in Va.Code Ann. § 18.2–500 (Michie 1996).

**6.** Count seven asserts a common law conspiracy. "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means."

tions that Trigon and its Provider Policy Committee ("PPC") conspired to exclude doctors of chiropractic from coverage under Trigon policies. The PPC, which is partially composed of physicians, was created by Trigon's board of directors for the purpose of approving Trigon policies relating to health care providers and making recommendations to the board. (Compl.¶¶ 74–77.)

In response, Trigon argues first that, under the doctrine of intra corporate immunity, Trigon could not have conspired with itself. Second, Trigon contends that, with respect to the antitrust claim, the plaintiffs have not pleaded the violation with sufficient specificity.

 The doctrine of intracorporate immunity holds that because at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself. Since a corporation is an artificial entity, it can only act through its authorized agents, officers, and employees. Thus, a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility. *See Selman v. Am. Sports Underwriters, Inc.*, 697 F.Supp. 225, 238 (W.D.Va.1988).

Nevertheless, the plaintiffs argue that because at least one of the PPC's members was neither an employee nor director of Trigon, the doctrine of intra corporate immunity does not apply.

I find this argument to be unpersuasive. Examining the substance of the relationship between Trigon and all members of the PPC, it is clear that all members of the PPC were acting as agents for Trigon and thus the doctrine is applicable. *See Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 703 (4th Cir.1991).

*Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 453 S.E.2d 261, 267 (1995).

 However, the plaintiffs correctly note that the doctrine of intra corporate immunity is excepted when an agent of the corporation has an "independent personal stake" in achieving the corporation's impermissible objectives. Such personal stake must be wholly separable from the more general and indirect corporate benefit. *See Selman*, 697 F.Supp. at 239.

On the face of the complaint, the plaintiffs have pleaded sufficient facts to satisfy the personal stake exception, namely, that the agents of Trigon, as competing physicians, had a direct interest in the market for healthcare services which was distinct and independent from their roles as agents of Trigon. (Compl. ¶ 80.)

 With respect to the specificity argument raised by Trigon, I find it to be without merit. In order to adequately allege an antitrust conspiracy, the plaintiffs must plead, where possible, only some details of the time, place, and alleged effect of the conspiracy. *See Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir.1994). The plaintiffs have clearly alleged that the members of the PPC, in their roles as agents of Trigon and during corporate meetings on Trigon's behalf, conspired to injure doctors of chiropractic and their patients in the practice of chiropractic medicine. The allegations thus have been made with sufficient specificity.

### C. The Monopolization Count.

Relying on the same conduct alleged in count one, the plaintiffs allege in count two that this conduct represented an attempt by Trigon to monopolize the market for treatment of neuromuskuloskeletal conditions.[7]

7. Count two is based on 15 U.S.C.A. § 2 (West 1997) which provides that "[e]very person who shall ... attempt to monopolize ...

To prove attempted monopolization, the plaintiff must in turn show: (1) a specific intent to monopolize a relevant market; (2) predatory or anti competitive acts; and (3) a dangerous probability of successful monopolization. *See Advanced Health–Care Servs., Inc. v. Radford Comm. Hosp.*, 910 F.2d 139, 147 (4th Cir. 1990). It is this last prong that Trigon argues cannot be proved based upon the plaintiffs' pleading since Trigon does not compete in the market for spinal manipulation.

The doctors that make up the PPC, however, are alleged to be in that market and thus, on the face of their complaint, the plaintiffs' claim is sufficient.

### D. The Racketeering Count.

In count three of the complaint, the plaintiffs have alleged a pattern of racketeering activity on the part of Trigon, violating provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961–68 (West 2000).[8] Specifically, the plaintiffs allege that Trigon violated state and federal extortion laws, as well as committed mail and wire fraud, in furtherance of their racketeering activity. *See* 18 U.S.C.A. § 1961(1) (West 2000).[9] Trigon argues that these claims are barred by the McCarran–Ferguson Act ("the Act"), 15 U.S.C.A. §§ 1011 et seq. (West 1997).

Section 2(b) of the Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C.A. § 1012(b). According to Trigon, allowing the plaintiffs to proceed under RICO would impair Va.Code Ann. § 38.2–200 (Michie 1999), an insurance statute that Trigon claims does not create a private right of action in tort.[10]

In furtherance of its goal to recognize "the supremacy of the States in the realm of insurance regulation," *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), the Act mandates the following inquiry in assessing the applicability of a federal statute in a case such as this: (1) whether the federal statute at issue specifically relates to the business of insurance; (2) whether the state statute at issue was enacted for the purpose of regulating the business of insurance; and (3) whether application of the federal statute would invalidate, impair or supercede the state statute. *See id.* at 501, 113 S.Ct. 2202.

---

any part of the trade or commerce among the several States ... shall be deemed guilty of a felony." Civil remedies are provided for in 15 U.S.C.A. §§ 15, 26 (West 1997).

**8.** Section 1962(a) of RICO provides, "It shall be unlawful for any person who has received any income ... from a pattern of racketeering activity ... to use or invest ... any part of such income ... in ... the ...operation of[ ] any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C.A. § 1962(a). Civil remedies for violations of this statute are provided for under 18 U.S.C.A. § 1964(c) (West 2000).

**9.** The plaintiffs originally included securities fraud as part of the RICO claim, but have now withdrawn that allegation because there has been no criminal conviction for securities fraud, as required by RICO. *See* 18 U.S.C.A. § 1964(c).

**10.** Section 38.2–200 provides that the State Corporation Commission "is charged with the execution of all laws relating to insurance and insurers. All companies ... transacting or licensed to transact the business of insurance in this Commonwealth are subject to inspection, supervision and regulation by the Commission."

While it is not contended that the federal RICO statute relates in any way to the business of insurance, the plaintiffs claim that Trigon has not satisfied the second prong under *Fabe* because the state statute at issue does not relate to the "business of insurance."

The plaintiffs' argument suggests that the "business of insurance" component to *Fabe's* second prong would not be satisfied unless the patient policyholders were named in count three of the complaint.[11] In support of that position, the plaintiffs point to the Act's focus upon "the relationship between the insurance company and its policyholders." *Fabe*, 508 U.S. at 501, 113 S.Ct. 2202.

But the purpose of the Act in no way limits or defines those parties who are entitled to its enforcement. Indeed, it is not only the relationship between the insurer and insured, but also the "type of policy which could be issued, its reliability, interpretation, *and enforcement*" that make up the core of the "business of insurance" component to *Fabe's* second prong. *Id.* (*quoting SEC v. Nat'l Secs., Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)) (emphasis added).

Moreover, to place such a limited interpretation upon the meaning of that phrase would run afoul of the "broad" support sought to be afforded by Congress to state regulation of the insurance industry under the Act. *See Fabe*, 508 U.S. at 500, 113 S.Ct. 2202.

Against this backdrop, section 38.2–200, charging the State Corporation Commission ("SCC") with the execution of insurance laws in the Commonwealth, is clearly aimed at the enforceability of insurance policies and falls within the "business of insurance" as defined in *Fabe*.[12] Thus, the only issue remaining under Trigon's 12(b)(6) motion in this regard is whether application of the RICO statute would serve to impair or invalidate section 38.2–200. For the reasons that follow, I find that it would.

In support of its argument that the private enforcement of the plaintiffs' claims under RICO would impair section 38.2–200, Trigon relies first on *A & E Supply Co. v. Nationwide Mutual Fire Insurance Co.,* 798 F.2d 669 (4th Cir.1986), where the Fourth Circuit addressed the availability of a private right of action in tort under the Virginia Unfair Trade Practices Act ("VUTPA"), Va.Code Ann. §§ 38.2–500 to –517 (Michie 1999).

In holding that no such private right of action existed under VUTPA, the Fourth Circuit articulated the relevant standard to be applied in determining the availability of a private right of action to the plaintiffs in the instant case:

> [F]ederal courts should be reluctant to read private rights of action into state

---

11. "This claim, as pleaded, involves a dispute between Trigon and *providers* of healthcare services, not insureds. Therefore, Trigon's challenged activities do not fall within the 'business of insurance' as described in the ... Act and thus cannot satisfy the second prong of the *Fabe* test." (Pls.' Opp'n Br. at 19) (emphasis in original).

12. The plaintiffs also argue that the issue under *Fabe's* second prong is "whether the state statutes *that form the bases of Plaintiffs' claim* were enacted for the purpose of regulating the 'business of insurance.'" (Pls.' Opp'n Br. at 18) (emphasis added). This contention, however, misinterprets the *Fabe* test. Rather than permitting a party to define which state statutes might be at issue, a plain reading of the Act requires this court to construe application of the relevant federal statute against *all* sections of the state insurance code relating to the business of insurance. *See Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 211, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).

laws where state courts and state legislatures have not done so. Without clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state laws.

*A & E Supply Co.*, 798 F.2d at 674.

Applying that standard to VUTPA, the court of appeals emphasized the predecessor to section 38.2–200, which provided that tensions among the various goals under VUTPA were to be resolved by the SCC.[13] *See id.* at 675. Because that power had thus been expressly granted to the SCC, and not expressly given to private individuals, the *A & E Supply Co.* court concluded that no such private cause of action existed. *See id.* at 673.

The plaintiffs here contend that their RICO claim nevertheless withstands scrutiny under the Act because Trigon's alleged conduct violated chapters 22, 34, 42, and 43 of the Virginia insurance code rather than chapter five, which was addressed by the court in *A & E Supply Co.*[14] Assuming the truth of the plaintiffs' claim for purposes of review under rule 12(b)(6), it thus becomes necessary to determine whether a private right of action exists under those chapters of the Virginia code, a question of first impression in this circuit.

In support of their argument, the plaintiffs cite to *Humana Inc. v. Forsyth*, 525 U.S. 299, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999), for the proposition that because

"the acts identified as unlawful under RICO in the present case are also unlawful under Virginia law," (Pls.' Opp'n Br. at 20), a private cause of action exists under chapters 22, 34, 42, and 43.

The crucial difference between the Nevada statute at issue in *Forsyth* and the Virginia code sections at issue in this case is that the Nevada Unfair Insurance Practices Act expressly authorized a private right of action. *See Forsyth*, 525 U.S. at 312, 119 S.Ct. 710.[15] Recognizing that distinction, the plaintiffs contend that because "[t]here is no prohibition against private causes of action in any of [the Virginia] chapters," (Pls.' Opp'n Br. at 21), the remedy is thus available.

As has already been discussed, however, such is not the standard in Virginia. In conformance with the test articulated in *A & E Supply Co.*, private causes of action under Virginia's insurance laws are not the rule but rather the exception. The burden is upon the plaintiffs to show that such a cause of action exists, not upon Trigon to show that they do not. Thus, the plaintiffs' reliance upon *Forsyth* is misplaced.

Moreover, relying upon *Ambrose v. Blue Cross & Blue Shield of Va., Inc.*, 891 F.Supp. 1153 (E.D.Va.1995), Trigon cites section 38.2–200 as the relevant section that would be violated if the plaintiffs are permitted to pursue their RICO claim.

In *Ambrose*, the district court found that not only did a RICO cause of action violate chapter five of Virginia's insurance laws, but also chapter two's "enforcement" provisions.[16] *See id.* at 1161. Section 200 is

---

**13.** Prior to 1986, § 200 was codified at § 38.1–29. *See* Va.Code Ann. § 38.2–200.

**14.** The specific sections alleged to have been violated are Va.Code Ann. §§ 38.2–2203, –3408, –4221, and 4312(E) (Michie 1999).

**15.** "In addition to any rights or remedies available to the commissioner, an insurer is

liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth ... as an unfair practice." Nev.Rev.Stat. Ann. § 686A.310(2) (Michie 1999).

**16.** While the court in *Ambrose* cited the RICO allegation made in the complaint, it did not articulate the specific federal or state law

likewise found in chapter two of title 38.2. Citing *Fabe*, the *Ambrose* court determined that "in the most fundamental ways, these sections ... possess the end, intention or aim of adjusting, managing or controlling the business of insurance." *Id.* at 1163 (internal quotations omitted).

I find *Ambrose* persuasive in light of the sweeping limitations imposed upon private rights of action for insurance claims under *A & E Supply Co.* Coupling the *Ambrose* rationale with the standard articulated in *A & E Supply Co.* for determining the availability of a private right of action in insurance cases under Virginia law, I find that no such private right of action exists under sections 38.2–2203, –3408, –4221, or –4312(E).

Thus, to permit such a cause of action to proceed under the plaintiffs' RICO claim would not only "impair" the regulations sought to be accomplished under the relevant portions of the Virginia insurance code, but would indeed "supercede" the state laws at issue within the meaning of *Fabe's* third prong. Application of RICO would, in fact, convert "a system of public redress into a system of private redress." *See Ambrose*, 891 F.Supp. at 1165. Additionally, the forum for such redress would shift from the SCC to the federal court system. The result would be that RICO would supercede existing Virginia law. *See id.*

Thus, under *Fabe's* third prong, application of RICO would impair, invalidate, and supercede existing Virginia insurance law.[17] Pursuant to rule 12(b)(6), count three of the plaintiffs' complaint will be dismissed.[18]

### E. The Tortious Interference Count.

Count four of the complaint alleges common law tortious interference with business expectancies. The requisite elements for a prima facie showing of a tortious interference with a contract that is terminable at will are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed improper methods; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832, 835–36 (1987).

Assuming without deciding that Trigon's assertion that the contracts at issue were terminable at will is correct, I find that the plaintiffs have pleaded sufficient impermissible conduct to state a cause of action.

### F. The Breach of Contract Count.

Count six of the complaint alleges that contracts entered into with chiropractic doctors by Trigon are unconscionable with respect to compensation levels and, as such, are unenforceable. Trigon responds that because this claim was not pleaded in the original complaint, but only in the

---

upon which the RICO claim was predicated. *See id.* at 1155.

**17.** This conclusion also finds support in a decision, emphasized by Trigon, in which the SCC concluded that §§ 4221 and 3408 do not provide causes of action to the plaintiffs for discriminatory coverage of chiropractic treatment. (Def.'s Mot. Ex. A.) This decision was affirmed by the Supreme Court of Virginia. *See Va. Chiropractic Assoc. v. Blue Cross Blue*

*Shield of Va.*, No. 911921, slip op. at 1 (Va. Apr. 30, 1992).

**18.** Because I dismiss count three on the basis of the applicability of the McCarran–Ferguson Act, I need not consider Trigon's claims regarding the sufficiency of the plaintiffs' pleading with respect to the predicate offenses under RICO or the specificity of the fraud allegation.

plaintiffs' response to its motion to dismiss, the plaintiffs are barred from raising it now.

I find Trigon's assertion to be factually incorrect. In the "Introduction" to the complaint, the plaintiffs assert that "doctors of chiropractic have received ... unconscionably inadequate compensation." (Compl.¶ 2.) Thus, under rule 8(a), Trigon was put on notice of the plaintiffs' unconscionability claim.

### G. The Virginia Insurance Equality Laws.

Finally, in count eight of the complaint, the plaintiffs assert that Trigon's $500 limitation on chiropractic coverage violates various Virginia insurance equality laws. *See* Va.Code Ann. §§ 38.2–2203,[19] –3408,[20] –4221,[21] –4312(E) [22] (Michie 1999). As already discussed in this opinion, no private right of action exists under these sections. Thus, Trigon's motion to dismiss count eight of the plaintiffs' complaint will be granted.

### II

For the foregoing reasons, it is **ORDERED** that:

1. The defendants' Motion to Dismiss (Doc. No. 6) is denied with respect to counts one and two, and counts four through seven of the complaint, except that any claims for monetary relief by the plaintiffs VCA and ACA are dismissed with respect to counts four through seven, all claims for relief by said plaintiffs as to counts one and two are dismissed, and any claims by any plaintiff for any other person or entity are dismissed; and

2. With respect to counts three and eight of the plaintiffs' complaint, said Motion to Dismiss is granted.

19. "Notwithstanding any provision of any policy or contract of bodily injury liability insurance, ... reimbursement under the policy shall not be denied because the service is rendered by a licensed chiropractor."

20. "If an accident and sickness insurance policy provides reimbursement for any service that may be legally performed by a person licensed in this Commonwealth as a chiropractor, ... reimbursement under the policy shall not be denied because the service is rendered by the licensed practitioner."

21. "A nonstock corporation shall not fail or refuse ... to allow or to pay to a subscriber for all or any part of the health services rendered by any ... chiropractor, ... if the services rendered are services provided for by the subscription contract and ... are services which the ... chiropractor .:. is licensed to render in this Commonwealth."

22. "No health maintenance organization shall unreasonably discriminate against physicians as a class or any class of providers listed in § 38.2–4221 ...."