STONE CASTLE FINANCIAL, INC., Plaintiff,

v.

FRIEDMAN, BILLINGS, RAMSEY & CO. and John Nelligan, Defendants.

Civ.A. No. CV–01–1220–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 5, 2002.

Bernard J. DiMuro, Alexandria, VA, for Plaintiff.

Michael J. Barta, Baker Botts, LLP, Washington, DC, for Friedman, Billings, Ramsey & Co., Inc.

Edward B. MacMahon, Middleburg, VA, for Nelligan.

## *MEMORANDUM OPINION*

CACHERIS, District Judge.

This matter is before the Court on Defendants' Motions to dismiss all counts of the Complaint.

### I. Background

In July 1999, Stone Castle Financial, Inc. ("Plaintiff" or "Stone Castle"), a financial investment company located in California, secured the services of Friedman, Billings, Ramsey & Co., Inc. ("FBR"), an investment banking firm located in Alexandria, Virginia, to assist it with the acquisition of Genesis 2000, Inc. ("Genesis"), a loan processing software design company. The acquisition of Genesis was part of a comprehensive business plan devised by Stone Castle "to integrate loan software into Stone Castle's system" which

Stone Castle claims would "essentially revolutionize the internet mortgage industry." (Compl. ¶ 5.) According to Stone Castle, its plan "represented a unique and cutting-edge concept in the mortgage industry and, hence, was of very substantial value." (*Id.*)

Stone Castle alleges that, in the course of obtaining FBR's services, it provided FBR with confidential information and details regarding its efforts to acquire Genesis as well as information related to "the Stone Castle Business Plan" and Stone Castle's business generally. On August 6, 1999, FBR and Stone Castle entered into a Confidentiality Agreement (the "Agreement") under which FBR agreed that it would use the confidential information provided by Stone Castle only to evaluate the acquisition of Genesis and would not share the information for a period of one year. The Agreement also prohibited FBR from representing or targeting for acquisition any business identified by Stone Castle as a possible merger or acquisition target or possible candidate for some alternative business venture. John Nelligan ("Nelligan"), then Vice President of FBR, executed the Agreement on FBR's behalf.

According to Stone Castle, FBR and Nelligan never intended to abide by the terms of the Agreement and almost instantly violated the Agreement by using the information it gained from Stone Castle to benefit one of Stone Castle's competitors, iOwn Holding, Inc. ("iOwn"). Stone Castle further alleges that Defendants violated the law by sharing information about Stone Castle's plans to acquire Genesis with iOwn; by breaching the Agreement in order to prevent Stone Castle from purchasing Genesis, thereby allowing iOwn's acquisition of Genesis; and by misappropriating the Stone Castle Business Plan for the benefit of iOwn, as evidenced by iOwn's alleged implementation of the Stone Castle Business Plan.

Stone Castle alleges six specific causes of action, including: (1) Intentional Interference with Prospective Business Advantage by FBR and Nelligan (Count I); (2) Misappropriation of Trade Secrets by FBR and Nelligan (Count II); (3) Breach of Fiduciary Duty by FBR (Count III); (4) Fraud by FBR and Nelligan (Count IV); (5) Breach of Confidentiality Agreement by FBR (Count V); and (6) Conspiracy to Injure Business by FBR and Nelligan (Count VI). Stone Castle claims that, as a result of FBR's and Nelligan's "abuse of the fiduciary relationship and misappropriation of Stone Castle's confidential business information, [it] suffered significant financial losses" as a result of its inability to acquire Genesis. (Pl.'s Opp'n to Defs.' Mots. to Dismiss at 2.) It seeks both monetary damages and an injunction to prevent the continued misappropriation of trade secrets and tortious interference with business relationships.

Defendants now seek the dismissal of all six counts pursuant to Federal Rule of Civil Procedure 12(b)(6). Nelligan adopts the arguments set forth by FBR in support of its Motion to Dismiss, and adds that each of the tort claims should be dismissed because the contractual relationship between the parties forecloses any tort claim arising from the subject matter of the Agreement. Sitting in diversity, the Court will apply Virginia law.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir.1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In passing on a motion to dismiss, "the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true." *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Moreover, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8.

### III. Analysis

Defendants contend that Stone Castle's claims for intentional interference with prospective business advantage, breach of fiduciary duty, fraud, and conspiracy to injure business are either preempted by the Virginia Uniform Trade Secrets Act (the "VUTSA") or fundamentally flawed for some other independent reason. Defendants further argue that the Court should dismiss the remaining claims for breach of contract and misappropriation of trade secrets because Stone Castle fails to allege facts sufficient to support such claims.

### A. Preemption of the Tort Claims by the VUTSA

■ According to Defendants, Stone Castle's claims for tortious interference with business advantage, breach of fiduciary duty, fraud, and conspiracy to injure business are all predicated on its general allegation that Defendants misappropriated Stone Castle's confidential business information. As such, FBR maintains that they are all preempted by the VUTSA.

Stone Castle counters that none of its tort claims are preempted by the VUTSA because a violation of the VUTSA must be premised on the misappropriation of trade secrets. Because Stone Castle cannot be certain whether the confidential information in issue will be found to be trade secrets under the VUTSA, it contends that it may assert alternative theories of recovery in the alternative in the event that some of the information qualifies as trade secrets and some does not.[1] Stone Castle further argues that whether or not Defendants disclosed specific trade secrets, they nevertheless breached their fiduciary duty and committed other common law torts by facilitating the purchase of Genesis for iOwn, Stone Castle's competitor. Finally, Stone Castle argues in its supplemental opposition that, because the tort claims it alleges involve additional elements beyond those necessary to prove a misappropriation claim, its claims are not preempted by the VUTSA.

FBR contends that arguing in the alternative is precisely what the VUTSA precludes. According to Defendants, to allow Stone Castle to plead in the alternative while nevertheless employing the same factual predicate for each of the claims would eviscerate the preemption clause of the VUTSA. With respect to Stone Castle's argument that the tort claims must stand because they involve additional elements than a claim for misappropriation, FBR (again) argues that allowing the tort claims, which require different elements but are nevertheless premised on the same facts of misappropriating trade secrets, to go forward is utterly inconsistent with the VUTSA's preemption provision. Finally, in regard to Stone Castle's argument that the Court should permit discovery on all of its claims to determine if, in fact, evidence other than the misappropriation of trade secrets exists to support its tort claims,

---

1. It appears from Plaintiff's final brief in opposition to Defendants' motions to dismiss that Plaintiff retreats from this argument in favor of the argument that the tort claims are properly pled because they involve additional elements other than the misappropriation of trade secrets. (*See* Pl.'s Response Brief in Opp'n to Def. FBR's Mot. to Dismiss at 1–2.)

FBR avers that Stone Castle has failed to allege any facts that would permit it to survive a motion to dismiss and hence reach discovery.

Under the VUTSA, misappropriation is defined as:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2. Disclosure or use of a trade secret of another without express or implied consent by a person who

 a. Used improper means to acquire knowledge of the trade secret; or

 b. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

 (1) Derived from or through a person who had utilized improper means to acquire it;

 (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

 (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

 (4) Acquired by accident or mistake.

Va.Code Ann. § 591.336. Trade secrets, in turn, are defined as:

information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.; see also* Milton E. Babirak, Jr., *The Virginia Uniform Trade Secrets Act: A Critical Summary of the Act and Case Law,* 5 Va. J.L. & Tech. 15, *30 (2000) (explaining that the VUTSA, recognizing the difficulty of defining trade secrets, defines them broadly to include everything from "high tech" secrets such as formulas or processes to "low tech" information like "business leads, financial information ... and methods of conducting business," and even to "an idea, theory or concept").

Finally, the preemption provision in issue, provides, in relevant part, that:

A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.

B. This chapter does not affect:

 1. Contractual remedies whether or not based upon misappropriation of a trade secret; or

 2. Other civil remedies that are not based upon misappropriation of a trade secret; or

 3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

Va.Code Ann. § 59.1–341 (Michie 1998).

The single published opinion to address preemption under the VUTSA in the Fourth Circuit instructs that "[t]he plain language of the preemption provision indicates that the [VUTSA] was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Smithfield Ham and Prods. Co., Inc. v. Portion Pac,*

*Inc.*, 905 F.Supp. 346, 348 (E.D.Va.1995) (Smith, J.); *see also S & S Computers and Design, Inc. v. Paycom Billing Servs., Inc.*, No. CIV.A.500CV00058, 2001 WL 515260, at *3 (W.D.Va. Apr. 5, 2001) (Wilson, J.) (adopting reasoning from *Smithfield Ham* in dismissing claim for breach of fiduciary duty). According to *Smithfield Ham*, "the preemption provision is intended to preclude only those common law claims ... premised *entirely* on a claim for misappropriation of a trade secret." 905 F.Supp. at 348 (emphasis in original) (citing *Coulter Corp. v. Leinert*, 869 F.Supp. 732, 734 (E.D.Mo.1994); *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F.Supp. 202, 205 (D.Minn.1988) (citations omitted); *Hutchison v. KFC Corp.*, 809 F.Supp. 68, 71–72 (D.Nev.1992)).

In *Smithfield Ham*, the plaintiff alleged the misappropriation of its secret barbecue sauce recipe. In addition to pleading a VUTSA violation, the plaintiff contended that the defendant had tortiously interfered with its contract expectancy and business relations because the defendant had exploited knowledge it had about Smithfield's business in order to steal Smithfield's customers. On a motion for summary judgment, the court found that the tortious interference claims survived because, even if the defendant was successful in showing that it had independently developed the recipe and therefore had *not* misappropriated a trade secret, the plaintiff nevertheless had pled facts sufficient to "present a compelling argument that [the defendant's] misuse of inside information related to pricing, ingredients, and volume of business constituted tortious interference with their long-term contractual relationship and anticipated renewals." *Id.* at 350.

Aside from *Smithfield Ham*, only one other district court within the Fourth Circuit has addressed preemption under the VUTSA. In an unpublished opinion, the Western District of Virginia determined that the VUTSA displaced a claim for breach of fiduciary duty where the claim was based on the misappropriation of a trade secret. *See S & S Computers*, 2001 WL 515260, at *3. Before dismissing the claim as preempted, however, the court determined that the plaintiff had alleged facts that, "if proven, are sufficient to establish its proprietary information as a trade secret under VUTSA." *Id.* at *2.

Several other courts interpreting virtually identical preemption provisions also have dismissed claims pled in the alternative where those claims were based on the misappropriation of trade secrets. *See, e.g., On–Line Techs. v. Perkin Elmer Corp.*, 141 F.Supp.2d 246, 260–61 (D.Conn. 2001) (dismissing unjust enrichment claim pursuant to Connecticut Uniform Trade Secrets Act's preemption provision "because ... [the] claim does not allege any ill-gotten gains other than those resulting from the misuse of confidential information"); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 730 (N.D.Ohio 1999) (finding common law claims for misuse and misappropriation of trade secrets preempted by Ohio's trade secrets act). Where the claims had not already been determined to be based on trade secrets, however, courts have refused to find the claims preempted. *See, e.g., Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F.Supp. 827, 830 (N.D.Ill.1997) (holding breach of fiduciary duty claim not preempted where underlying information may not qualify as trade secrets).

In reviewing the decisions of district courts within this Circuit as well as decisions from other jurisdictions, the Court has identified a distinct thread common to all. Specifically, where courts have found preemption on a motion to dismiss, they repeatedly establish that the information in issue—as alleged—constitutes trade se-

crets before reaching the preemption question. *See, e.g., id.* (same); *S & S Computers*, 2001 WL 515260, at *2–3 (determining that allegations that information met the elements of a trade secret, "if proven, are sufficient to establish its proprietary information as a trade secret under VUTSA" before finding claim for breach of fiduciary duty preempted); *On–Line Techs.*, 141 F.Supp.2d at 261 (rejecting argument that unjust enrichment claim should not be dismissed because "OLT has plead nothing that is not a protectable trade secret"); *Frantz v. Johnson*, 999 P.2d 351, 358 n. 3 (Nev.2000) ("There may be future instances where a plaintiff will be able to assert tort claims, including intentional interference with prospective advantage ... that do not depend on the information at issue being deemed a trade secret, and are therefore barred by the UTSA"); *Thomas Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 972 (N.D.Ill.2000) (finding breach of fiduciary duty claim preempted on motion for summary judgment after determining that "[t]he evidence is substantial that the confidential sales data and related information" allegedly taken "constitute trade secrets under the statute"). And, in *Smithfield Ham*, this court, in holding that the VUTSA did not preempt a claim for tortious interference with a business expectancy, distinguished between trade secrets and other information by allowing the claim to go forward on the allegation that the defendant had misused inside business information. *See* 905 F.Supp. at 350. This court so held even where, at first blush, the information appeared to fall within the broad definition of trade secrets. *See* Va.Code Ann. § 59.1–336; *see generally* Milton E. Babirak, Jr., *The Virginia Uniform Trade Secrets Act: A Critical Summary of the Act and Case Law*, 5 Va. J.L. & Tech. 15, *30 (2000).

Contrary to Defendants argument, "the displacement of the common law is not as broad" as they suggest. *Micro Display*, 699 F.Supp. at 205; *see also Frantz*, 999 P.2d at 358 n. 3 ("Indeed, we do not agree that the [Uniform Trade Secrets Act] provides a blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret."). Rather, "[o]nly that law which conflicts with [the trade secrets act] is displaced." *Micro Display*, 699 F.Supp. at 205. Because "[c]onflicting law is that law dealing exclusively with trade secrets," *id.*, and because it cannot be established at this juncture whether the confidential information at issue in this case is a trade secret, the Court cannot find that Stone Castle's alternative claims are preempted.

This holding comports with a plain reading of the statute, which instructs that a claim under the VUTSA "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a *trade secret*." Va.Code Ann. § 59.1–336 (emphasis added). The plain meaning of the statute, coupled with decisions interpreting similar preemption provisions in the context of a motion to dismiss, make it apparent that, unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA. As Defendants made clear at oral argument, the parties very much dispute whether the confidential information constitutes trade secrets. Until such time that the issue can be determined, the Court will not find the claims preempted by the VUTSA.

**B. Alternative Theories for Dismissal of the Tort Claims**

According to Defendants, if the tort claims are not preempted by the VUTSA, they nevertheless fail to meet the strictures of Rule 12(b)(6) and therefore must be dismissed. For the following reasons,

the Court will dismiss Count VI of the Complaint; the remaining claims otherwise survive.

### 1. Intentional Interference with Prospective Business Advantage

In Virginia, "[c]ourts have listed the elements of a prima facie case of tortious interference with prospective business advantages and relationships as (1) The existence of a valid business expectancy with a probability of a future economic profit; (2) Defendant's knowledge of the expectancy; (3) A reasonable certainty that absent the defendant's misconduct, the plaintiff would have realized the expectancy; and (4) Damage to the plaintiff." *Smithfield Ham*, 905 F.Supp. at 349. When a claim for tortious interference involves a business expectancy, "the plaintiff must show that the defendant's actions were improper." *Id.* (citing *Duggin v. Adams*, 234 Va. 221, 227, 360 S.E.2d 832, 836 (1987)). Under Virginia law, "misuse of inside or confidential information, or breach of a fiduciary relationship," constitute improper actions. *See Duggin*, 234 Va. at 228, 360 S.E.2d at 836.

Defendants contend that Stone Castle altogether fails to assert in the Complaint that it reasonably believed it would have successfully acquired Genesis absent FBR's alleged interference. Defendants argue that the Complaint therefore fails to state all of the elements of a claim for tortious interference with business advantage.

In addition, Defendant Nelligan asserts that each of the tort claims, if not preempted by the VUTSA, are nevertheless barred because they duplicate the contract claims. Under Virginia law, "a tort claim normally cannot be maintained in conjunction with a breach of contract claim," *Erdmann v. Preferred Research Inc. of Georgia*, 852 F.2d 788, 791 (4th Cir.1988) (quoting *A & E Supply Co. v.*

*Nationwide Mut. Fire Ins.*, 798 F.2d 669, 671–72 (4th Cir.1986) and citing *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514, 518 (1983)), except "where a party establishes an independent, willful tort 'that is factually bound to the contractual breach but whose legal elements are distinct from it.'" *Id.* (quoting *A & E Supply*, 798 F.2d at 672). According to Nelligan, none of the tort claims meet this exception.

Stone Castle counters that the Complaint implicitly states that absent Defendants' conduct, it would have acquired Genesis. Stone Castle asks the Court that, in the event it finds the pleadings deficient, it allow Stone Castle to amend the Complaint.

The Court finds that Stone Castle has sufficiently pled a claim for tortious interference with business advantage. In particular, the introductory paragraphs of the Complaint sufficiently allege that, absent FBR's misconduct, Stone Castle was reasonably certain that it would have acquired Genesis—as iOwn did—based on its negotiations with Genesis and dealings with FBR. As for the remaining elements of tortious interference, Stone Castle has properly alleged that both FBR and Nelligan knew of the anticipated acquisition of Genesis; that they intentionally interfered with that transaction by sharing with iOwn confidential information gleaned through their relationship with Stone Castle; and that Stone Castle has suffered damages as a result of lost profits and business opportunities.

Moreover, the claim is not barred as a redundant breach of contract claim. Rather, while the claim for tortious interference may be factually bound to the breach of the Agreement, the tortious interference claim states more than a claim for negligent performance of the Agreement. *See Richmond Metro. Auth. v. McDevitt Street*

*Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998) (barring constructive fraud claim where the allegations "are nothing more than allegations of negligent performance of contractual duties"). Thus, the Court will deny Defendants' Motion to Dismiss with respect to Count I.

### 2. Breach of Fiduciary Duty

 Stone Castle alleges in the Complaint that, as its agent for the acquisition of Genesis, FBR owed it a fiduciary duty to keep confidential the information Stone Castle shared with FBR about its business and plans to acquire Genesis. Stone Castle's claim for breach of fiduciary duty states that the parties executed the Agreement "in connection therewith." (Compl. ¶ 30.)

Defendants contend that Virginia law precludes non-contractual theories of relief, such as breach of fiduciary duty, where the duty does not exist absent a contract. According to Defendants, the only duty alleged by Stone Castle arises out of the Confidentiality Agreement referred to in the Complaint, and that, absent the Agreement, no independent common law duty existed between the parties. As such, the breach of fiduciary duty claim is coterminous with the breach of contract claim and therefore barred.

 Defendants are correct that a common law duty must exist separate from a contractual duty in order to pursue both a claim for breach of contract and a claim for breach of fiduciary duty. Specifically, the Supreme Court of Virginia explains that:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the

other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Richmond Metro. Auth.*, 256 Va. at 558, 507 S.E.2d at 347. Courts will recognize claims for both breach of contract and breach of fiduciary duty so long as "'the duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract.'" *Id.* (quoting *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)); *see also Vanguard Military Equip. Corp. v. David B. Finestone Co., Inc.*, 6 F.Supp.2d 488, 492 (E.D.Va. 1997) (Clarke, J.) (explaining that, "[t]o be properly pled, the claim must state a cause of action in tort that is independent from the breach of contract cause of action"). Thus, to avoid dismissal here, Stone Castle must have sufficiently alleged that two separate duties were breached "by the same or separate conduct—a duty arising out of the contract and a duty arising out of common law." *Id.* at 493.

 The Court finds that Stone Castle has identified both a contractual duty and an independent common law duty. As explained in *H–B Ltd. P'ship v. Wimmer*, "[a] fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979) (finding real estate broker, charged with negotiating purchase of property, breached fiduciary duty where he purchased property for himself) (citing *Horne v. Holley*, 167 Va. 234, 241, 188 S.E. 169, 172 (1936)). Whether or not Stone Castle meets this standard ultimately will be borne out by

the facts. For the instant motion, however, Stone Castle has sufficiently alleged that FBR and Nelligan owed it a contractual duty by virtue of the Agreement as well as a separate duty arising from Defendants' role as the investment banking firm retained for the acquisition of Genesis. *See, e.g., Fyrdman & Co. v. Credit Suisse First Boston Corp.*, 272 A.D.2d 236, 236–37, 708 N.Y.S.2d 77 (N.Y.App.Div. 2000) (recognizing fiduciary duty where investment banking firm committed to financing and negotiating acquisition of corporation). *But cf. Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 399–400 (1976) (finding duty owed by attorney in performance of professional services arose out of contract and not common law).

### 3. Fraud

In Virginia, actual fraud entails "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir.1999) (citing *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)). Constructive fraud consists of the same elements; however, "the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Hitachi*, 166 F.3d at 628 (citing *Evaluation Research*, 247 Va. at 148, 439 S.E.2d at 390).

To plead fraud, a plaintiff also must meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, Rule 9(b) directs that "the circumstances of fraud ... shall be stated with particularity," Fed.R.Civ.P. 9(b), which includes the "time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby." *Breeden v. Richmond*,

171 F.R.D. 189, 195 (M.D.N.C.1997). Affirmative misrepresentations involve "a specific statement made at a specific place and time and involves specific persons." *Id.*

Stone Castle claims in Count IV that FBR, through Nelligan, represented that it would disclose Stone Castle's confidential business information to iOwn solely for the purpose of obtaining financing. According to Stone Castle, Defendants misrepresented their intent to keep the information confidential and instead intended to use the information "to induce and assist iOwn to acquire genesis [sic]." (Compl. ¶ 38.)

Defendants assert that it is impossible for Stone Castle to state a claim for fraud because Stone Castle could not have relied on misrepresentations about the use of the information Stone Castle disclosed to FBR due to the fact that Stone Castle had given the information to FBR *before* FBR made any assurances that it would maintain the confidentiality of the information. Defendant Nelligan further asserts that the pleadings are not adequately particular with respect to him to meet the requirements of Rule 9(b). In addition, Nelligan contends that the fraud alleged pertains to unfulfilled promises or assurances as to future events and, as such, cannot sustain an action for fraud.

While Stone Castle does not lay out the allegations in support of an action for fraud in chronological order, it nevertheless sufficiently pleads all of the necessary elements. In particular, at paragraph 7 of the Complaint, it states that, "[b]ased on FBR's expression of interest in assisting Stone Castle in the acquisition of Genesis, and in reliance upon FBR's undertaking to maintain in confidence all information related to the Stone Castle Business Plan and its proposed acquisition of Genesis, Stone Castle revealed to FBR confidential information," including

the Stone Castle Business Plan. (Compl. ¶ 7.) The Complaint later alleges that "[i]n or about July 1999, Stone Castle approached Defendant FBR to seek FBR's assistance in connection with financing the proposed acquisition of Genesis and executing" the business plan. (Compl. ¶ 36.) The next sentence alleges that "[i]n connection therewith, Stone Castle provided John Nelligan, managing director and Vice President of FBR, with the Stone Castle Business Plan." (*Id.*)

A fair reading of the entire Complaint shows that Stone Castle sufficiently alleges that it gave its confidential information to FBR in reliance on FBR's assurances that it would not share the information other than to realize the acquisition of Genesis. The Complaint also provides adequate information related to the time, place, and person making the representations, and therefore satisfies the requirements of Rule 9(b) as to both FBR and Nelligan. (*See, e.g.,* Compl. ¶ 37) ("On or about July 28, 1999, FBR, by and through John Nelligan, ... represented to Stone Castle that he would present Stone Castle's concept to iOwn for the sole purpose of convincing iOwn to provide financing.")

 With respect to Nelligan's argument that the Complaint only alleges a claim for fraud with respect to future promises, and hence is barred as a breach of contract claim, "it is true that ... fraud 'cannot ordinarily be predicated on unfulfilled promises or statements of future events.'" *Flip Mortgage Corp. v. McElhone,* 841 F.2d 531, 537 (4th Cir.1988). However, "fraud can be found in a breach of contract if the defendant did not intend to perform at the time of contracting." *Id.* Where a defendant is alleged to have made a promise which he intended not to perform, "'his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud.'" *Id.* (quoting

*Colonial Ford Truck Sales v. Schneider,* 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985)). Here, the promise made by Nelligan, as alleged, constitutes a misrepresentation of his intent to abide by the Agreement. As such, the claim for fraud survives.

**4. Conspiracy to Injure Business**

Virginia law defines a conspiracy to injure another's business as:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act.

Va.Code Ann. § 18.2–499 (Michie 1996); *cf. Feddeman & Co., C.P.A., P.C., v. Langan Assocs., P.C.,* 260 Va. 35, 45, 530 S.E.2d 668, 674 (2000) (providing that "establishing a conspiracy 'does not require proof that the conspirators' 'primary and overriding purpose is to injure another,'" but only requires a showing that "defendants acted 'intentionally, purposefully, and without lawful justification'") (citations omitted).

 Plaintiff alleges in Count VI of the Complaint that "Defendants conspired with iOwn, Genesis and others, maliciously and intentionally, for the purpose of interfering with and injuring Stone Castle's business." (Compl. ¶ 50.) According to Stone Castle, at this early stage in the litigation, it is not privy to information that would allow it to allege with great specificity the manner and nature of the conspiracy. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 11.) Nevertheless, it contends that the Court should allow it to go forward with its claim to allow Stone Castle the opportunity to investigate the role of the defendants in

the conspiracy. (*Id.*) (citing *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 253 (D.Md.2000).)

Defendants contend that Stone Castle "utterly fails to offer any supporting explanation or evidence as to how, when or where the alleged conspiracy was formed or accomplished." (Mem. of P. & A. in Support of Def. FBR's Mot. to Dismiss at 11.) Citing *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797, 802 (1985), Defendants assert that the conspiracy claim must be dismissed because it is alleged " 'in mere conclusory language.' " (*Id.*)

Because Stone Castle provides no specific factual basis, other than the conclusory allegation that Defendants conspired with iOwn, Genesis and others, to support its claim for conspiracy to injure business, the Court finds that Plaintiff has not pled sufficient facts to withstand a motion to dismiss.[2] Thus, even if Plaintiff is relying on the allegations incorporated by reference into Count VI, the claim's conclusory statements of fault cannot meet even the liberal pleading requirements of Rule 8. The Court therefore will dismiss Count VI.

**B. Breach of Contract and Misappropriation of Trade Secrets**

 Although recognizing that the VUTSA specifically does not preempt breach of contract claims, Defendants assert that Stone Castle's claims for breach of contract and misappropriation of trade secrets cannot survive a Rule 12(b)(6) motion because, as alleged, Defendants disclosed the confidential information prior to

the formation of the Confidentiality Agreement. As such, Defendants contend that the disclosure of information prior to the execution of a confidentiality agreement can neither be a breach of the agreement nor a misappropriation of a trade secret. (Mem. of P. & A. in Support of FBR's Mot. to Dismiss at 13 (citing Va.Code Ann. § 59.1–336).)

The Court rejects FBR's argument. In contending that no liability can be imputed to FBR for sharing confidential information prior to the execution of the Confidentiality Agreement, Defendants ignore that Plaintiff's allegation simply states that Defendant Nelligan "represented . . . that he would present Stone Castle's concept to iOwn for the *sole purpose* of convincing iOwn to provide financing." (Compl. ¶ 37 (emphasis added).) The statement in no way alleges that Plaintiff, prior to the date on which the parties memorialized their arrangement, had waived any understanding that the information it shared with FBR would be kept confidential and only shared for the purpose of Stone Castle's acquisition of Genesis. Therefore, contrary to FBR's contention that the information was not "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," Va.Code Ann. § 59.1–336 (Michie 2001), Plaintiff has sufficiently alleged that it had undertaken reasonable efforts to maintain the secrecy of its confidential business information, notwithstanding and in spite of Defendants' July communication with iOwn. FBR's Motion to Dismiss Stone Castle's claim for breach of the Confidentiality Agreement (Count V)[3] and FBR's and

---

**2.** The Court notes that Plaintiff's reliance on *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243 (D.Md.2000), and *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 151 F.Supp.2d 723 (W.D.Va.2001), is misplaced. First, the *Adams* decision pertains to conspiracy under Maryland law, and therefore is inapplicable to the interpretation Virginia

conspiracy law. *See* 193 F.R.D. at 250. Second, *American Chiropractic* pertains to an allegation of antitrust conspiracy and is therefore distinguishable from the case at bar. 151 F.Supp.2d at 731.

**3.** Stone Castle alleged a breach of confidentiality agreement claim solely against FBR.

Nelligan's Motions to Dismiss Stone Castle's misappropriation of trade secrets (Count II) claim therefore will be denied.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss Count VI. The Court will deny Defendants' Motions to Dismiss Counts I–V. An appropriate Order shall issue.

## *ORDER*

In accordance with the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Count VI of the Complaint is DISMISSED without prejudice;

(2) Defendants' Motions to Dismiss are DENIED with respect to Counts I–V of the Complaint;

(3) Plaintiff is GRANTED leave to amend its Complaint as to Count VI. It shall have one (1) week from the date of entry of this Order to file an amended complaint, and the Defendants shall have two (2) weeks to respond; and

(4) The Clerk of the Court shall forward copies of this ORDER and the accompanying Memorandum Opinion to all counsel of record.